CLERKS OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
5/30/2023
LAURA A. AUSTIN, CLERK
BY: s/ T. TAYLOR
  DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

WESLEY HAYNIE, *et al.*,

    Plaintiffs,

v.

HAROLD CLARKE, in his official capacity, Director of the Virginia Department of Corrections, *et al.*,

    Defendants.

Case No. 1:23-cv-00016

**Jury Trial Demanded**

## COMPLAINT

NOW COME Plaintiffs Wesley Haynie ("Mr. Haynie") and Reginald Fitzgerald ("Mr. Fitzgerald") (collectively, "Plaintiffs"), by counsel, demanding a jury trial and alleging the following against Defendants Robernett, Ashby, Dye, Squire, Deel, Owens, Stiltner, and Israel Hamilton, in their individual capacities, and Harold W. Clarke, in his official capacity, as Director of the Virginia Department of Corrections ("VDOC") (collectively, "Defendants"):

### INTRODUCTION

1. Mr. Haynie's constitutional rights were violated when, on October 14, 2021, Defendant Robernett and Defendant Ashby refused to secure Mr. Haynie in a seatbelt in the back of a transport van, and intentionally drove recklessly and dangerously in order to harm Mr. Haynie. As a result of Defendant Robernett and Ashby's actions, Mr. Haynie sustained physical and emotional injuries, including a bulging disc in his spine and loss of consciousness. Since the date of this accident—over one year later—Mr. Haynie's bulging disc and back pain continues to be ignored by VDOC and staff at Keen Mountain Correctional Center.

1

2. Further, after Mr. Haynie made various internal complaints and grievances, Defendants Robernett, Ashby, Dye, Squire, Deel, and Owens made various threats to Mr. Haynie —in unity with the VDOC custom and the unofficial policy at Keen Mountain Correctional Center—causing Mr. Haynie to fear for his safety, and forcing Mr. Haynie to now request a transfer to a separate facility.

3. Mr. Fitzgerald's constitutional rights were also violated at Keen Mountain Correctional Center by Defendant Stiltner, who also made various threats to Mr. Fitzgerald in unity with the VDOC custom and the unofficial policy at Keen Mountain Correctional Center. Specifically, while incarcerated at Keen Mountain Correctional Center, Mr. Fitzgerald witnessed multiple correctional officers, Sergeant Heartless and Lieutenant Blankenship, plant a knife in an inmate's locker. As a result of witnessing these events, Defendant Stiltner informed Mr. Fitzgerald that if he made grievances or complaints regarding what he saw, Mr. Fitzgerald would be physically assaulted and place in the "hole" so that Mr. Fitzgerald could not get in contact with anyone.

4. Plaintiffs now bring this action for injunctive relief, compensatory damages, and punitive damages pursuant to 42 USC §§ 1983 and 1988, the First Amendment, Eighth Amendment, Fourteenth Amendment, and Virginia state torts.

**PARTIES**

5. Mr. Haynie is an individual and is currently incarcerated at State Farm Correctional Center, a VDOC facility, in Virginia.

6. Mr. Fitzgerald is an individual and is currently incarcerated at Keen Mountain Correctional Center, a VDOC facility, in Oakwood, Virginia.

7. Defendant Harold W. Clarke is Director of the VDOC, the executive agency responsible for operating and maintaining correctional facilities within Virginia, such as Keen Mountain

Correctional Center. VDOC provides supervision and control over state correctional facilities. VDOC is responsible for issuing "official" and "unofficial" regulations, policies, directives, and operating procedures governing the operation of state correctional facilities, and VDOC has official and unofficial procedures and policies governing the issuing of grievance forms and transportation of inmates. VDOC has its regular place of business in Richmond, Virginia.

8. Defendant Clarke is being sued only in his official capacity as Director of the VDOC, and is being sued only with respect to Plaintiffs' request for injunctive and equitable relief.

9. Defendant Robernett is a Keen Mountain Correctional Center Officer and a resident of Virginia.

10. Defendant Ashby is a Keen Mountain Correctional Center Officer and a resident of Virginia.

11. Defendant Dye is a Keen Mountain Correctional Center Officer and a resident of Virginia.

12. Defendant Squire is a Keen Mountain Correctional Center Officer and a resident of Virginia.

13. Defendant Deel is a Keen Mountain Correctional Center Officer and a resident of Virginia.

14. Defendant Owens is a Keen Mountain Correctional Center Officer and a resident of Virginia.

15. Defendant Stiltner is a Keen Mountain Correctional Center Officer and a resident of Virginia.

16. Defendant Israel Hamilton is the Keen Mountain Correctional Center Warden and a resident of Virginia. As a Warden, Defendant Hamilton is tasked with ensuring that Keen Mountain is safe for Plaintiffs, and ensuring that his rules and guidelines are enforced and followed by staff at Keen Mountain Correctional Center.

17. At all times relevant herein, Defendant Robernett, Defendant Ashby, Defendant Dye, Defendant Squire, Defendant Deel, Defendant Owens, Defendant Stiltner, and Defendant Hamilton ("the Individual Defendants") were employed by Defendant Clarke/the VDOC.

18. All acts by the Individual Defendants alleged herein were committed within the scope of their employment, under the authority of the VDOC, and while they were performing tasks specifically authorized and ratified by the VDOC, or in the alternative, while they were acting on their own accord.

19. At all times relevant hereto, the Individual Defendants were acting under color of state law.

20. The Individual Defendants are being sued in their individual capacity as to all claims.

21. Defendants Robernett, Ashby, Dye, Squire, Deel, Stiltner, and Owens are being sued under the theory of direct liability pursuant to all of Plaintiffs' claims. Defendant Hamilton is being sued under the theory of direct liability and respondeat superior pursuant to all of Plaintiffs' claims, with the exception of Plaintiffs' 1983 claims, where liability through respondeat superior is not claimed.

**JURISDICTION**

22. This actions arises under the United States Constitution, particularly under the provisions of the First Amendment, the Eighth Amendment, and the Fourteenth Amendment to the Constitution of the United States, and under federal law, particularly the Civil Rights Act of 1871, 42 U.S.C. § 1983, as amended.

23. This court has subject-matter jurisdiction under 42 U.S.C. §§ 1983; 28 U.S.C. § 1331, 1343; and the First Amendment, Eighth Amendment, and Fourteenth Amendment, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiffs' state law claims.

24. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this action occurred in the Western District of Virginia, specifically in Buchanan County, Virginia.

25. Plaintiffs have actually or constructively exhausted all administrative remedies applicable to their claims.

## FACTS

26. On October 14, 2021, in the early morning hours Mr. Haynie was transported by vehicle from Keen Mountain Correctional Center to Greensville County Circuit Court—an approximately six hour drive.

27. Before and during transport, Mr. Haynie was handcuffed with a chain around his waist along with leg shackles.

28. In order to transport Mr. Haynie to Greensville County Circuit Court, Defendant Robernett and Defendant Ashby placed Mr. Haynie in the back of the police van. Mr. Haynie was the only individual being transported.

29. In the back of the police van there were no windows and no seats other than a solid steel "bench" on both sides of the van.

30. Mr. Haynie told both Defendant Robernett and Defendant Ashby that Mr. Haynie could not ride in the back of the windowless van because Mr. Haynie suffered from claustrophobia.

31. Defendant Robernett and Defendant Ashby told Mr. Haynie that he was required to ride in the back of the van, at which point Mr. Haynie stated that he did not wish to appear in Court and wanted to waive his appearance.

32. Defendant Robernett and Defendant Ashby told Mr. Haynie that he could not refuse his court date, and shut the van doors, locking Mr. Haynie in the back of the van.

33. Defendant Robernett and Defendant Ashby did not place Mr. Haynie in a seatbelt in the back of the van.

34. The van then began the drive to transport Mr. Haynie. Defendant Robernett and Defendant Ashby were driving the van.

35. During the transport, Mr. Haynie, alone and without a seatbelt in the back of the van, began to feel nauseous.

36. The van began to drive reckless and speed around corners, causing Mr. Haynie's nausea to increase.

37. Mr. Haynie yelled to Defendant Robernett and Defendant Ashby, who were in the front of the van, to pull over, as Mr. Haynie was having a panic attack and becoming ill.

38. Defendant Robernett responded to Mr. Haynie, "shut your black ass up."

39. Mr. Haynie began screaming and crying asking Defendant Robernett and Defendant Ashby to stop driving.

40. The van continued to drive recklessly—speeding around corners, increasing its speed in general, and intentionally slamming on the breaks, causing Mr. Haynie to be thrown from his seat.

41. Mr. Haynie could hear Defendant Robernett and Defendant Ashby in the front laughing at Mr. Haynie.

42. To avoid being throw from his seat, Mr. Haynie then sat on the floor of the van.

43. During the six hour drive, Mr. Haynie continued to scream and panic, while the driving continued to speed around corners and slam on the breaks unnecessarily and recklessly.

44. At some point during the transport, Mr. Haynie lost consciousness.

45. The next event Mr. Haynie remembers is waking up with Defendant Robernett's hands around Mr. Haynie's throat, checking to see if Mr. Haynie had a pulse, while Mr. Hyanie was lying on his back on the floor of the van.

46. Mr. Haynie noticed the individuals present included Defendant Robernett, Defendant Ashby, and a Deputy from Greensville Circuit Court.

47. Mr. Haynie could not move, his lower back was numb, and he had knots on his forehead from being thrown around the back of the van.

48. Defendant Robernett and Defendant Ashby asked Mr. Haynie if he could move, to which Mr. Haynie replied that he could not.

49. At this time Mr. Haynie discovered that his pants were soaked in his own urine.

50. Defendant Robernett and Defendant Ashby then dragged Mr. Haynie out of the van and laid Mr. Haynie on the floor of the entryway of the detention center.

51. Mr. Haynie asked for a doctor, and laid on the ground for approximately thirty minutes pleading for medical attention.

52. Eventually Mr. Haynie's lawyer was called to the area, and when she arrived she asked Mr. Haynie what happened.

53. Mr. Haynie explained to his lawyer that he had been placed in the back of the van without a seatbelt and was knocked unconscious, at which point Defendant Robernett immediately interrupted Mr. Haynie and falsely told the lawyer that Mr. Haynie "refused the seatbelt."

54. This statement was made in the presence of Mr. Haynie's lawyer as well as a courtroom deputy.

55. Notably, Defendants Robernett and Ashby later changed their story, stating in a response to a grievance filed by Mr. Haynie that he was "placed in a seatbelt when departing the facility."

56. When Mr. Haynie returned to prison later that night he never had his vitals checked and was not seen by medical.

57. The following day, Defendant Ashby called Mr. Haynie into his office and asked Mr. Haynie to sign a piece of paper that stated Mr. Haynie was offered a seatbelt but that Mr. Haynie refused it.

58. Mr. Haynie, of course, refused to sign the paper which stated a lie.

59. Defendant Ashby said to Mr. Haynie that if Mr. Haynie did not sign the paper Mr. Haynie "would regret it."

60. Mr. Haynie still refused to sign the paper stating a lie.

61. As a result of not signing the paper that Defendant Ashby asked Mr. Haynie to sign, Mr. Haynie has been the victim of harassment and threats by prison staff at Keen Mountain Correctional Center.

62. For example, on or around the week of September 13, 2022, Mr. Haynie was told by Defendant Owens that if Mr. Haynie did not stop making written complaints of officer misconduct that Defendant Owens, Defendant Skyire, and Defendant Deel are going to put Mr. Haynie "in the hole" and "beat your black ass and stop feeding you." Defendant Owens told Mr. Haynie that Defendant Owens "can do whatever I want because my name tag says Owens," and his family can do anything.

63. Defendant Owens has multiple family members who hold positions at the VDOC.

64. Defendant Deel has told Mr. Haynie that he will beat Mr. Haynie's "black ass and put you in hole and won't let you out." Defendant Deel has also told Mr. Haynie, "shut up fucking nigger. I will throw you in hole and beat your ass with the cuffs on" in response to Mr. Haynie stating that he will file complaints against Defendant Deel for his actions.

65. As another example of threats Mr. Haynie faced, on or around the week of September 5, 2022, Defendant Squire told Mr. Haynie and another inmate, Jwa Charley, that if they did not stop filing written complaints Defendant Squire would purposely plant a knife in their cells and have Mr. Haynie transferred to a higher security facility, and that regardless of where Mr. Haynie is transferred Defendant Squire has friends and family that can "get to him." This statement was witnessed by two other inmates.

66. Inmate Jwa Charley was later transferred to Red Onion state prison after correctional officers alleged that they located a weapon in Mr. Charley's cell.

67. Additionally, on or around the week of September 2, 2022, Mr. Haynie was called to the Lieutenant's office, and Defendant Dye stated to Mr. Haynie that if Mr. Haynie continues to make complaints about officers making threats the officers would plant a knife in Mr. Haynie's cell and transfer Mr. Haynie to Red Onion state prison.

68. As a result of these consistent threats, Mr. Haynie has been forced to stop filing grievances and exercising his First Amendment rights out of fear of retaliation and harm from prison staff at Keen Mountain Correctional Center.

69. In addition to the above, the VDOC and Keen Mountain Correctional Center have been deliberately indifferent to Mr. Haynie's serious medical needs, which resulted from the events on October 14, 2021.

70. Specifically, as a result of the acts of Defendant Robernett and Defendant Ashby on October 14, 2021, Mr. Haynie suffered, among other injuries, a disk bulge that resulted in severe back pain.

71. However, despite the fact that Mr. Haynie made numerous complaints to staff at Keen Mountain Correctional Center about this back pain and disc bulge, Mr. Haynie was refused an MRI on his back until nearly one year later on or around August 2022.

72. Despite the fact that Mr. Haynie was finally able to confirm that he had a serious injury and was in serious pain as a result, staff at Keen Mountain Correctional Center still refused to treat Mr. Haynie's bulging disc.

73. Specifically, Mr. Haynie has been told by staff at Keen Mountain Correctional Center that he will be schedule for a medical consultation and surgery for his bulging disc, months have gone by with no appointment set.

74. Mr. Haynie has made numerous complaints to staff at Keen Mountain Correctional Center to address his severe back pain and bulging disc, but staff at Keen Mountain Correctional Center have not acted.

75. Mr. Fitzgerald has also been the victim of harassment and threats by prison staff at Keen Mountain Correctional Center.

76. Specifically, while incarcerated at Keen Mountain Correctional Center, Mr. Fitzgerald witnessed multiple correctional officers, Sergeant Heartless and Lieutenant Blankenship, plant a knife in inmate Jwa Charley's locker, and as a result of witnessing these events, Defendant Stiltner informed Mr. Fitzgerald that if he made grievances or complaints regarding what he saw Mr. Fitzgerald would be physically assaulted and place in the "hole" so that Mr. Fitzgerald could not get in contact with anyone. These threats occurred on or around November of 2022.

77. When Mr. Fitzgerald attempted to file grievances related to these events, the grievances and complaints were thrown away by staff.

78. As a result of these consistent threats, Mr. Fitzgrald has been forced to stop attempting to file grievances and exercising his First Amendment rights out of fear of retaliation and harm from prison staff at Keen Mountain Correctional Center.

## INJURIES AND DAMAGES

79. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

80. This action seeks damages on behalf of Mr. Haynie for the physical and emotional pain and suffering as a consequence of Defendants' unconstitutional and tortious actions that continue to this day.

81. More specifically, as a result of Defendant Robernett and Ashby's actions Mr. Haynie suffered extreme nausea, contusions to his head, a loss of consciousness, a bulging disc, and the emotional damages that result from such an experience. Further, Mr. Haynie has suffered great emotional distress and harm as a result of Defendants' threats of physical harm and retaliation, and Mr. Haynie has since been diagnosed with PTSD. Finally, Mr. Haynie continues to suffer physical pain on a daily basis, as his bulging disc and back pain remain ignored.

82. The acts of Defendants entitle Mr. Haynie to injunctive relief, compensatory damages, punitive damages, and reasonable attorney's fees.

83. This action also seeks damages on behalf of Mr. Fitzgerald for the emotional pain and suffering as a consequence of Defendant Stiltner's unconstitutional and tortious actions. Mr. Fitzgerald has suffered great emotional distress and harm as a result of Defendant's Stiltner's threats of physical harm and retaliation.

## CLAIMS FOR RELIEF

### COUNT I
**Denial of Mr. Haynie's Federal Rights Under Color of State Law, 42 U.S.C. § 1983, in Violation of the Eighth Amendment Against Defendants Robernett and Ashby Sued In Their Individual Capacity**

84. Mr. Haynie repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

85. Defendant Robernett's and Ashby's intentional failure to properly secure Mr. Haynie in their vehicle, and their subsequent intentional actions to drive recklessly and dangerously in order to cause Mr. Haynie physical and emotional pain, constitutes excessive force and thus cruel and unusual punishment under the Eighth Amendment.

86. Further, Defendant Robernett's and Ashby's deliberate indifference to Mr. Haynie need for medical attention after injuries Mr. Haynie suffered also constitutes cruel and unusual punishment under the Eighth Amendment.

87. Defendant Robernett's and Ashby's conduct was outrageous, reckless, malicious, and sadistic and for the very purpose of causing harm which constitutes cruel and unusual punishment.

88. Because Defendant Robernett and Ashby intentionally caused Mr. Haynie to suffer harm without any reasonable justification and for no purpose other than to cause harm, which is unquestionably impermissible under the United States Constitution, Defendant Robernett and Ashby are not entitled to qualified immunity. *See Thompson v. Commonwealth of Virginia*, 878 F.3d 89 (4th Cir. 2017).

89. Defendant Robernett's and Ashby's actions were intentional, malicious, willful, wanton, and/or reckless disregard for Mr. Haynie's constitutionally protected rights, thereby entitling Mr. Haynie to an award of punitive damages.

## COUNT II
**Denial of Mr. Haynie's Federal Rights Under Color of State Law, 42 U.S.C. § 1983, in Violation of the Eighth Amendment Against Defendant Hamilton In His Individual Capacity**

90. Mr. Haynie repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

91. Defendant Hamilton's subordinates' and staff's failure to address Mr. Haynie's bulging disc for over one year constitutes deliberate indifference to Mr. Haynie's serious medical needs and thus cruel and unusual punishment under the Eighth Amendment.

92. It can be reasonable inferred from the facts in this Complaint and the consistent and widespread conduct that Defendant Hamilton is directly involved in the denial of Mr. Haynie's medical treatment, or has given tacit authorization for the denial.

## COUNT III
**Denial of Mr. Haynie's Federal Rights Under Color of State Law, 42 U.S.C. § 1983, in Violation of the Fourteenth Amendment Against Defendants Robernett, Ashby, Ownes, Deel, and Stiltner, Sued In Their Individual Capacity**

93. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

94. Defendant Robernett, Ashby, and Stiltner's unconstitutional actions described in this Complaint were done, in part, due to Plaintiffs' protected class, specifically their race and color.

95. Defendant Robernett, Ashby, Ownes, Deel, and Stiltner demonstrated that they violated Plaintiffs' constitutional rights as a result of Plaintiffs' race and color when they continually referred to Plaintiffs' race and color while furthering their unconstitutional actions.

96. Because Defendant Robernett, Ashby, Ownes, Deel, and Stiltner's actions were unquestionably impermissible under the United States Constitution Defendants Robernett, Ashby, Ownes, Deel, and Stiltner are not entitled to qualified immunity.

97. Defendant Robernett, Ashby, Ownes, Deel, and Stiltner's actions were intentional, malicious, willful, wanton, and/or reckless disregard for Plaintiffs' constitutionally protected rights, thereby entitling Plaintiffs to an award of punitive damages.

## COUNT IV
### Denial of Plaintiffs' Federal Rights Under Color of State Law, 42 U.S.C. § 1983, in Violation of the First Amendment Against Defendant Clarke, in His Official Capacity, And Against Defendants Ashby, Dye, Squire, Deel, Owens, Stiltner, and Hamilton, In Their Individual Capacity

98. Plaintiffs repeats, reiterates, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

99. Defendants Ashby, Dye, Squire, Deel, Stiltner, and Owens threatened and continue to threaten Plaintiffs for filing grievances, making complaints, and/or for refusing to sign false documents, in violation of Plaintiffs' First Amendment rights.

100. The actions of Defendants Ashby, Dye, Squire, Deel, Stiltner, and Owens are so widespread, consistent, and unrelenting that it can be reasonably inferred that such actions are not only known and implicitly authorized by Defendant Hamilton and Defendant Clarke, but are being accomplished pursuant to the unofficial policy or custom of Defendant Hamilton and Defendant Clarke.

101. Defendants' actions were intentional, malicious, willful, wanton, and/or reckless disregard for Plaintiffs constitutionally protected rights, thereby entitling Plaintiffs to an award of punitive damages.

102. Because Plaintiffs continue to suffer First Amendment violations, Plaintiffs requests that this Court order Defendant Clarke to transfer Plaintiffs to a separate facility where they can be free from First Amendment retaliation, and where Mr. Haynie can receive the appropriate medical attention to resolve his back injuries.

# COUNT V
## Assault Against Plaintiffs by Defendants Ashby, Dye, Squire, Deel, Owens, Stiltner, and Hamilton, In Their Individual Capacity

103. Plaintiffs repeats, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

104. Defendants purposely, knowingly, recklessly, and wrongfully threatened to cause physical harm to Plaintiffs if they made complaints or did not stop making written complaints of violations.

105. Defendants caused Plaintiffs to be in reasonable apprehension of offensive conduct.

106. As a direct and proximate result of the conduct, described herein, Plaintiffs have suffered, and will in the future suffer, great damages including mental anguish, stress, embarrassment, humiliation, inconvenience, and physical pain and suffering, causing symptomatic reaction and other nonpecuniary injury in amounts to be determined at trial.

107. Defendants' conduct described herein was done with actual malice toward Plaintiffs and actually and proximately causing him damage and entitling them to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray the Court enter judgment for him and order relief as follows:

108. Compensatory damages against all Individual Defendants sued in their individual capacity, jointly and severally;

109. Punitive damages against all Individual Defendants sued in their individual capacity, jointly and severally;

110. Reasonable attorney's fees and costs pursuant to 28 USC § 1988;

111. Injunctive relief against all Defendants; and

112. That the Court grant any other and further relief it deems equitable and just

Respectfully submitted, the 30th day of May, 2023.

/s/ Blake A. Weiner
Blake A. Weiner, VA Bar No. 94087
BLAKE WEINER LAW, PLLC
1806 Summit Avenue, Suite 300
Richmond, VA 23230
Telephone: (804) 482-1465
Email: bweiner@blakeweinerlaw.com
*Counsel for Plaintiffs*