**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Abingdon Division**

WESLEY HAYNIE,

       Plaintiff,

v.                                    Civil Action No. 1:23CV16

ASHBY, *et al*.,

       Defendants.

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

       Ashby, Robinette, Squier, Dye, Deel, and Owens ("Defendants"), by counsel, hereby submit the following Memorandum in Support of their Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

### INTRODUCTION

       Plaintiff, Wesley Haynie ("Plaintiff" or "Haynie") is an inmate within the lawful custody of the Virginia Department of Corrections ("VDOC") currently housed at Haynesville Correctional Center.  Proceeding with Counsel, the Plaintiff has filed a Complaint pursuant to 42 U.S.C. § 1983 with this Court which has been severed into two separate cases.  (*See* ECF No. 1.)  At this juncture, the claims, Defendants, and allegations that remain in this case are as follows:  (1) First Amendment claims against Defendants Ashby, Owens, Squier, Deel, and Dye for allegedly threating the Plaintiff not to file grievances at the Plaintiff's previous place of incarceration, Keen Mountain Correctional Center ("Keen Mountain") (ECF No. 38, at 6); (2) a state law claim of assault against Defendant Ashby for allegedly threatening the Plaintiff (ECF No. 1, at 15); and, (3) Eighth Amendment claims against Defendants Robinette and Ashby for allegedly denying the Plaintiff a seatbelt and subjecting him to "rough ride" on October 14, 2021, resulting in the Plaintiff

1

suffering a "bulging disc" and back pain, and denying the Plaintiff medical care thereafter. (*Id*. at 1-10.)  However, at this juncture, all the Defendants are entitled to summary judgment as to the Plaintiff's claims against them.

As an initial matter, Haynie failed to exhaust his administrative remedies with respect to his First Amendment claims against Defendants Ashby, Squier, Owens, Deel, and Dye, as well as his claim of assault against Defendant Ashby, which is required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) prior to filing suit.  The Plaintiff did not even take the first step of VDOC's grievance procedure by filing an Informal/Written Complaint about his First Amendment claims against Squier, Owens, Deel, and Dye.  And, although the Plaintiff filed an Informal/Written Complaint related to his First Amendment and assault allegations against Ashby, he did not follow it up with a Regular Grievance as required by VDOC's grievance procedure. Defendants Squier, Owens, Deel, and Dye are therefore entitled to judgment as a matter of law on the Plaintiff's First Amendment claims against them, and Defendant Ashby is entitled to judgment as to the Plaintiff's First Amendment and assault claims against him.  However, should the Court find that there is a dispute of fact regarding the Plaintiff's efforts at exhaustion, Defendants Squier, Owens, Deel, Dye, and Ashby respectfully request an evidentiary hearing on this issue prior to trial on the merits in this case.  *See*, *e.g.*, *Martin v. Mathena*, No. 7:19-CV-00218, 2021 WL 5858595, at *2 (W.D. Va. Nov. 19, 2021) (citations omitted) (explaining that if "the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary."), *R&R adopted*, No. 7:19-CV-00218, 2021 WL 5855841 (W.D. Va. Dec. 9, 2021).

Moreover, even assuming that the Plaintiff exhausted all of his First Amendment allegations against Defendants Ashby, Squier, Owens, Deel, and Dye and taking them as true,

these Defendants are still entitled to summary judgment in this case. The Plaintiff cannot establish either a First Amendment retaliation or prior restraint claim because he has admitted in discovery that Ashby, Squier, Owens, Deel, and Dye did not prevent him from engaging in any First Amendment protected activity at all. Instead, the Plaintiff avers that these Defendants only prevented him from filing prison grievances. But, as held by the U.S. Court of Appeals for the Fourth Circuit, filing prison grievances and complaints, alone, is *not* a protected First Amendment activity. Defendants Ashby, Squier, Owens, Deel, and Dye therefore cannot be said to have violated the Plaintiff's First Amendment rights by threatening the Plaintiff not to engage in such an unprotected activity. And, as such, Defendants Ashby, Squier, Owens, Deel, and Dye are also entitled to Qualified Immunity in this case. There is simply not any clearly established case law putting Ashby, Squier, Owens, Deel, and Dye on reasonable notice that threatening the Plaintiff not to file prison grievances is *per se* unconstitutional under the First Amendment. Rather, pursuant to Fourth Circuit precedent, district courts have routinely held that tampering with an inmate's access to a prison grievance procedure does *not* violate the First Amendment. Defendants Ashby, Squier, Owens, Deel, and Dye are entitled summary judgment for a variety of reasons on the Plaintiff's First Amendment claims against them in this case.

Likewise, Defendant Ashby is also entitled to judgment as a matter of law on the Plaintiff's assault claim. As this Court has already held, the Plaintiff's allegations that Ashby threatened the Plaintiff does not give rise to any cognizable state law claim of assault at all.

And, finally, both Ashby and Defendant Robinette are entitled to judgment on the basis that the Plaintiff failed to retain a medical expert to establish the but-for and proximate causation of his alleged injuries at trial. In his Complaint, the Plaintiff alleges that Ashby and Robinette subjected the Plaintiff to a "rough ride" from Keen Mountain to the Greensville Circuit Court on

October 14, 2021 because they did not provide him with a seatbelt. As a result of this rough ride, the Plaintiff has pled that he suffered a "bulging disc" and pain in his back. However, the evidence in this case is that the Plaintiff did not suffer any bulging disc as a result the transportation because an x-ray in November 2021 did not reveal any such injury and as of February 2023, the Plaintiff had not been definitively diagnosed with a bulging disc at all. Rather, the Plaintiff had pre-existing disc degeneration and causes of back pain prior to the October 14, 2021 transportation. The Plaintiff failed to retain an expert to opine that he in-fact suffers from a bulging disc and that the rough ride was the cause of it and his back pain. He therefore cannot carry his burden at trial of proving that Defendants Ashby and/or Robinette were the but-for and proximate cause of his alleged injuries. And, without an expert opinion, the Plaintiff's claims fail under both the subjective and objective prongs of the Eighth Amendment analysis. The Plaintiff's medical records reveal that the Plaintiff suffered no other discernable injury as a result of the transportation, which the Supreme Court has directed fails to establish an Eighth Amendment claim. Further, to the extent that the Plaintiff has pled medical deliberate indifference claims against Defendants Robinette and Ashby, the Plaintiff's allegations are blatantly contracted by his own medical records. Although the Plaintiff alleges that he received no medical care upon his return to Keen Mountain on October 14, 2021 and thereafter, this is demonstrably false.

For all of these reasons, and as detailed in-depth herein, Defendants Ashby, Robinette, Squier, Dye, Deel, and Owens respectfully request that the Court grant them summary judgment in this action.

### AFFIDAVITS AND EVIDENCE

In support of their Motion for Summary Judgment, the Defendants submit the following evidence:

4

- The Affidavit of Keen Mountain's Institutional Grievance Coordinator, H. Hardin ("Hardin Aff.");

- The Supplement Affidavit of Keen Mountain's Institutional Grievance Coordinator, H. Hardin ("Supp. Hardin Aff.");

- The Declaration of Keen Mountain Nurse Practitioner, Deborah Ball ("Ball Decl.");

- Three excerpts from the Plaintiff's Deposition, taken in this action on February 28, 2025 ("Haynie Dep. Excerpt No. 1"; "Haynie Dep. Excerpt No. 2"; "Haynie Dep. Excerpt No. 3"); and,

- The Plaintiff's Responses to the Defendants' Requests for Admissions and the Plaintiff's Responses to the Defendants' Interrogatories ("Haynie RFP Resp." and "Haynie ROG Resp.").

The Defendants respectfully request that the Court consider these affidavits, the declaration, their enclosures, and the discovery that has been propounded in this action, in support of their Motion for Summary Judgment. *See* Fed. R. Civ. P 56(c).

## STATEMENT OF DISPUTED FACTS[1]

### *Plaintiff's Allegations*

1. "On October 14, 2021, in the early morning hours Mr. Haynie was transported by vehicle from Keen Mountain Correctional Center to Greensville County Circuit Court—an approximately six hour drive. (*Id*. ¶ 26.)

---

[1] In accordance with Local Rule 66(b), the Defendants have included in this Memorandum a Statement of Disputed Facts and a Statement of Undisputed Facts. Although the Defendants dispute most of the Plaintiff's allegations, they include his allegations as disputed facts to provide complete context.

2. Mr. Haynie was allegedly not placed in a seatbelt during the ride to Greensville Circuit Court and therefore he was tossed about in the back of the transportation van during the drive.  (*Id.* ¶¶ 27-43.)

3. "When Mr. Haynie returned to prison later that night he never had his vitals checked and was not seen by medical." (*Id.* ¶ 56.)

4. As a result of the transportation, Haynie suffered a "bulging disc and back pain".  (*Id.* ¶ 1.)

5. After Haynie returned to Keen Mountain, a VDOC employee allegedly asked Haynie to sign a document saying he was offered a seatbelt for the transportation to Greensville Circuit Court. Haynie refused to sign the document.  (*Id.* ¶¶ 57-60.)

6. "As a result of not signing the paper that Defendant Ashby asked Mr. Haynie to sign, Mr. Haynie has been the victim of harassment and threats by prison staff at Keen Mountain Correctional Center."  (*Id.* ¶ 61.)

7. "For example, on or around the week of September 13, 2022, Mr. Haynie was told by Defendant Owens that if Mr. Haynie did not stop making written complaints of officer misconduct that Defendant Owens, Defendant Skyire, [sic] and Defendant Deel are going to put Mr. Haynie 'in the hole' and 'beat your black ass and stop feeding you.' Defendant Owens told Mr. Haynie that Defendant Owens 'can do whatever I want because my name tag says Owens,' and his family can do anything."  (*Id.* ¶ 62.)

8. "[O]n or around the week of September 5, 2022, Defendant Squire told Mr. Haynie and another inmate, Jwa Charlery, that if they did not stop filing written complaints Defendant Squire would purposely plant a knife in their cells and have Mr. Haynie transferred to a higher security facility, and that regardless of where Mr. Haynie is transferred Defendant Squire has friends and family that can 'get to him.'"  (*Id.* ¶ 65.)

9. "[O]n or around the week of September 2, 2022, Mr. Haynie was called to the Lieutenant's office, and Defendant Dye stated to Mr. Haynie that if Mr. Haynie continues to make complaints about officers making threats the officers would plant a knife in Mr. Haynie's cell and transfer Mr. Haynie to Red Onion state prison." (Compl. ¶ 67.)

10. "As a result of these consistent threats, Mr. Haynie has been forced to stop filing grievances[.]" (Compl. ¶ 68.)

### STATEMENT OF UNDISPUTED FACTS

### *Facts about the Parties*

11. The Plaintiff, Mr. Haynie, was previously incarcerated at Keen Mountain. (*See id*. ¶ 26.)

12. During the relevant time of the Complaint, Defendant Dye was a Keen Mountain Officer. (*Id*. ¶ 11.)

13. During the relevant time of the Complaint, Defendant Squier was a Keen Mountain Officer. (*Id*. ¶ 12.)

14. During the relevant time of the Complaint, Defendant Owens was a Keen Mountain Officer. (*Id*. ¶ 14.)

15. During the relevant time of the Complaint, Defendant Robinette was a Keen Mountain Officer. (*Id*. ¶ 9.)

16. During the relevant time of the Complaint, Defendant Ashby was a Keen Mountain Officer. (*Id*. ¶ 10.)

17. During the relevant time of the Complaint, Defendant Deel was a Keen Mountain Officer (*Id*. ¶ 13.)

*Facts about Haynie's pre-existing disc degeneration, causes of back pain,*
*and his medical care*

18. Deborah Ball is Nurse Practitioner at Keen Mountain who has previously clinically treated the Plaintiff, including for his back issues.  Ball Decl. ¶ 6.

19. On November 25, 2019, Haynie was seen at the University of Virginia ("UVA") Health System, Department of Radiology and Medical Imaging, for completion of an x-ray.  On that day, a two-image x-ray was taken of Haynie's lumbar spine, which is his lower back.  In the "clinical history" notes section of Haynie's x-ray results, it was noted that Haynie was receiving the x-ray because he had complained of back pain after lifting weights.  A copy of Haynie's November 25, 2019 x-ray results are attached to Ms. Ball's Declaration[2] as Enclosure A.  Ball Decl. ¶ 8.

20. UVA's x-ray findings showed degenerative disc changes and no acute fracture of the lumbar spine.  Ball Decl. ¶ 9 and Encl. A.

21. In layman's terms, a back "disc", also known as an intervertebral disc, is a spongy cushion between the vertebrae of the spine.  Discs essentially act as shock absorbers and help keep the spine stable. "Degenerative changes" means that the discs in the back are showing signs of wear and tear and that the discs may be losing some of their fluid content and becoming slightly thinner.  Disc degenerative changes are common and are typically a part of aging or the result of strenuous activity, such as lifting weights, working out, or playing sports. Ball Decl. ¶ 10.

22. On October 14, 2021, Haynie was incarcerated at Keen Mountain.  His medical records document that Keen Mountain Registered Nurse A. Compton saw Haynie when he was

---

[2] In Ms. Ball's Declaration, the Declaration refers to its enclosures as being attached to an "Affidavit".  This is a typographical error.  Defendants apologize for any confusion.

returned from an off-site court appearance.  In October 2021, it was standard practice for an inmate to see a medical provider when he returned from any off-site trip.  A copy of Haynie's medical chart from October 14, 2021 is attached to Ms. Ball's Declaration as Enclosure B. Ball Decl. ¶ 11.

23. Pursuant to VDOC's medical-charting practices, Nurse Compton properly charted her review of Haynie on October 14, 2021 in "COI" format.[3]  Specifically, Nurse Compton charted that she took Haynie's temperature, which was 98.4 degrees (Fahrenheit).  She also charted that Haynie did not voice any medical complaints.  Specifically, Nurse Compton wrote "[d]enies SX[4] of COVID. . . . Denies any injuries or medical needs at this time."  Encl. B.  Nurse Compton also charted that she "[a]dvised [Haynie] to contact medical if any SX of COVID appear" and that Haynie understood her recommendation.  Ball Decl. ¶ 12 and Encl. B.

24. On October 18, 2021, Nurse Practitioner Ball saw Haynie at sick call.  He complained of lower back pain.  Haynie stated that he was denied medical care upon his return from the transportation on October 14, 2021; however, based on Ms. Ball's review of Haynie's medical records, Nurse Compton saw him when he returned to the facility on October 14, 2021, and Nurse Gross saw him on October 15, 2021.  Ms. Ball charted that Haynie was not showing any signs of distress, that he did not have any injuries or deformities, and that he was prescribed pain medication.  A copy of Haynie's October 18, 2021 medical chart is attached to Ms. Ball's Declaration as Enclosure C.  Ball Decl. ¶ 13 and Encl. C.

---

[3]As part of VDOC's medical-charting practices, VDOC medical providers subscribe to the "COI" form of charting, which stands for "complaint, objective assessment, intervention."  This means that when a nurse or other provider meets with an inmate, he or she charts in the inmate's chart the: (1) complaint of the inmate; (2) objective assessment of the medical provider; and (3) medical intervention taken to address or alleviate the inmate's concern(s).  Hall Decl. ¶ 5.

[4] "SX" is medical shorthand for "symptoms."  Hall Decl. n.1.

25. Haynie's medical records document that the next time he was seen by medical staff was on November 4, 2021. Haynie reported back pain on and off since October 15, 2021, but he denied these symptoms on November 4, 2021. Haynie demonstrated full range of motion in all extremities without any issues. Haynie was again prescribed pain medication. A copy of Haynie's November 4, 2021 medical records are attached to Ms. Ball's Declaration as Enclosure D. Ball Decl. ¶ 14 and Encl. D.

26. On November 9, 2021, Haynie had a two-image x-ray taken at Keen Mountain. The x-ray demonstrated that Haynie's "disc spaces" were "maintained." In layman's terms, this means that the spaces between the vertebrae in the spine, which are cushioned by the discs, were of a normal size and were not showing obvious signs of narrowing, indicating healthy discs. This means that Haynie's x-ray did not demonstrate any bulging discs or other injuries. A copy of Haynie's November 9, 2021 x-ray results are attached to Ms. Ball's Declaration as Enclosure E. Ball Decl. ¶ 15 and Encl. E.

27. Haynie's medical records reflect that he continued to complain to medical providers about back pain following the November 9, 2021 x-ray, and that Haynie was provided with a variety of pain medications. However, Haynie's medical records also reflect that Haynie complained to medical providers about leg pain as well. Haynie's medical records reveal that Haynie had been shot in his left leg prior to being incarcerated. Ball Decl. ¶ 16.

28. On December 13, 2021, the Plaintiff was seen by medical for complaints of leg pain. An x-ray order was placed for Haynie. A copy of Haynie's December 13, 2021 medical chart is attached to Ms. Hall's Declaration as Enclosure F. Ball Decl. ¶ 17 and Encl. F.

29. On December 14, 2021, Haynie had an x-ray of his femur and left hip and pelvis. The x-ray results found that Haynie had a "[o]ld fixated distal femur fracture" meaning that he had broken

a bone in the lower part of his thigh bone (femur), near the knee joint, that was previously surgically repaired.  The x-ray of Haynie's hip and pelvis found "moderate arthritic changes of the hip" meaning that Haynie was experiencing arthritis in his hip and possible cartilage loss in the hip joint.  A copy of Haynie's December 14, 2021 x-ray results are attached to Ms. Ball's Declaration as Enclosure G.  Ball Decl. ¶ 18 and Encl. G.

30. On January 15, 2022, Nurse Practitioner Ball saw Haynie for his complaints of both leg and back pain.  She continued pain medication for Haynie to alleviate his pain.  A copy of Haynie's January 15, 2022 medical chart is attached to Ms. Ball's Declaration as Enclosure H.  Ball Decl. ¶ 19 and Encl. H.

31. From January through July 2022, Haynie continued to be seen by medical providers and prescribed pain medication, including Cymbalta, Mobic, Naproxen, Zanflex, Motrin, and a muscle rub.  Ball Decl. ¶ 20.

32. On July 25, 2022, upon Nurse Practitioner Ball's order, Haynie had an Magnetic Resonance Imaging ("MRI") scan of his lumbar spine taken at the Clinch Valley Medical Center.  Haynie's medical history was listed as including "numbness, tingling low back to left leg and left calf" on the MRI results.  According to the MRI results, the impression from the medical provider who interpreted the MRI was that Haynie had "[s]evere central canal stenosis L3-L4 L4-L5 secondary to combination of disc bulge and epidural lipomatosis."  A copy of the results of Haynie's July 25, 2022 MRI is attached to Ms. Ball's Declaration as Enclosure I.  Ball Decl. ¶ 21 and Encl. I.

33. Spinal "stenosis" is a narrowing of the spaces in one's spine, putting pressure on the spinal cord and nerves, often causing pain.  Stenosis commonly occurs as one ages.  A "disc bulge" occurs when the soft inner part of a spinal disc pushes out through the outer layer.  "Epidural

lipomatosis" occurs when excessive fat tissue accumulates in the epidural space, the area surrounding the spinal cord. Epidural lipomatosis can be caused by obesity or genetics. Ball Decl. ¶ 22.

34. After the July 25, 20222 MRI, Haynie continued to complain of pain and was continued on pain medication. An appointment at Virginia Commonwealth University ("VCU") Medical Center, Department of Neurosurgery was made for Haynie. Ball Decl. ¶ 23.

35. On February 8, 2023, Haynie was seen at VCU Medical Center, Department of Neurosurgery. At this appointment, a medical provider with VCU's Department of Neurosurgery, Dr. Ward, reviewed Haynie's July 25, 2022 MRI with Haynie. In his assessment of Haynie's MRI, Dr. Ward wrote that Haynie "has some moderate stenosis at L4 5 and L5-S1 but is not a bony stenosis he does have some lipomatosis but is not severe this is different than the reading from where the MRI was done which I think has been over read." Dr. Ward did not find any bulging discs in Haynie's July 25, 2022 MRI. Dr. Ward further noted that "I do not think stenosis is his problem I think he probably has arthritis." Dr. Ward recommended that Haynie be given an anti-inflammatory, such as Mobic, and that Haynie complete core strengthening exercises. A copy of Haynie's medical notes from the February 8, 2023 VCU visit with Dr. Ward is attached to Ms. Ball's Declaration as Enclosure J. Ball Decl. ¶ 24 and Encl. J.

36. According to Dr. Ward's notes, Dr. Ward did not agree with interpretation of Haynie's July 25, 2022 MRI by the medical provider at the Clinch Valley Medical Center. Specifically, Dr. Ward disagreed that Haynie's MRI demonstrated bulging discs and "severe" stenosis. Instead, Dr. Ward opined that Haynie likely has moderate (and not severe) stenosis, and arthritis. Arthritis is inflammation in one's joints and commonly occurs as one ages. Ball Decl. ¶ 25.

37. Following Haynie's February 8, 2023 visit with Dr. Ward, Haynie was again prescribed Mobic at Keen Mountain, as recommended, and Haynie was advised to complete core strengthening exercises.  Ball Decl. ¶ 26.

38. As stated, an x-ray of Haynie's lumbar spine in November 2019 demonstrated that he was exhibiting disc degenerative changes then, meaning that the spinal discs in Haynie's lower back were already showing signs of wear and tear and that the discs may be losing some of their fluid content and becoming slightly thinner.  Disc degenerative changes are common and are typically a part of aging or the result of strenuous activity, working out, or lifting weights. As disc degeneration progresses, it can cause bulging discs. Ball Decl. ¶ 27.

39. Further, Haynie was given another x-ray approximately three-and-a-half weeks after the October 14, 2021 transportation.  This x-ray showed that Haynie's "disc spaces are maintained" meaning that the Plaintiff's x-ray showed no bulging discs or spinal injuries. Ball Decl. ¶ 28.

40. It Nurse Practitioner Ball's opinion that Haynie did not suffer bulging discs as a result of the October 14, 2021 transportation.  In her clinical experience, if an individual suffers bulging disc(s) from an accident or traumatic event, such findings typically present themselves soon after the accident or event.  In this case, Haynie's November 2021 x-ray did not demonstrate any such bulging discs.  Ball Decl. ¶ 29.

41. In fact, Haynie's medical records reflect that Haynie had not been definitively diagnosed with bulging discs as of February 2023.  Specifically, as explained herein, two medical providers reached different conclusions regarding Haynie's July 25, 2022 MRI.  One provider opined that Haynie was exhibiting bulging discs, and another, Dr. Ward, opined that he believed this

13

interpretation was "overread" and diagnosed Haynie with moderate stenosis and arthritis, both common ailments that affect individuals as they age. Ball Decl. ¶ 30.

42. To the extent that the Plaintiff does suffer from any bulging disc(s) in his back, this is likely the result of disc degeneration or arthritis, which often occurs as an individual ages. As stated, Haynie's medical history reflects that has suffered from disc degeneration since at least 2019, and Dr. Ward opined that Haynie has arthritis in his spine in February 2023. Disc generation and arthritis can both cause bulging discs. Arthritis, i.e. inflammation, weakens the discs, making them more prone to bulging out. Ball Decl. ¶ 31.

43. To the extent that the Plaintiff suffers from pain, generally, in his back, the cause of this pain is unclear given the Plaintiff's medical history. Disc degeneration, stenosis, and arthritis can all cause pain. Further, as explained here-in, Haynie was previously shot in two places in his left leg prior to his incarceration. Haynie's medical records reflect that Haynie complained often of pain in both his back and his leg. It is entirely possible that Haynie's gunshot wounds in his leg have caused the pain that Haynie is experiencing in his back due to nerve damage or muscle imbalances. Specifically, some nerves travel from the leg to the lower back. If any of these nerves were affected by Haynie's gunshot wounds in his leg for which he was experiencing pain, it is likely that Haynie would also experience that pain in his back. Similarly, if one of Haynie's muscles in his leg was affected by the gunshot wounds, this could affect the natural alignment of Haynie's back, resulting in pain. Further still, both the medical provider at the Clinch Valley Medical Center and Dr. Ward agreed that Haynie's July 25, 2022 MRI exhibited some degree of epidural lipomatosis. As stated, epidural lipomatosis is a condition where excessive fat tissue accumulates in the epidural space, the area surrounding

the spinal cord. This accumulation can compress the spinal cord and nerves, leading to various symptoms, including pain. Ball Decl. ¶ 32.

44. Haynie is currently ongoing physical therapy for his back. Haynie Depo. Excerpt No. 2, Haynie Dep. 61:22.

### *Facts about VDOC's Grievance Procedure*

45. Operating Procedure ("OP") 866.1, Offender Grievance Procedure, is a mechanism for inmates to resolve complaints, appeal administrative decisions and challenge the substance of procedures. The process provides corrections administrators a means to evaluate potential problem areas and, if necessary, correct those problems in a timely manner. A copy of OP 866.1, in effect during the relevant timeframe, is attached to Ms. Hardin's Affidavit as Enclosure A. Hardin Aff. ¶ 4 and Encl. A.

46. Pursuant to VDOC OP 866.1, all issues are grievable except those pertaining to policies, procedures and decisions of the Virginia Parole Board, disciplinary hearings, State and Federal court decisions, laws, and regulations, and matters beyond the control of the VDOC. Every inmate is entitled to use the grievance procedure for problem resolution. Reprisals are not imposed upon inmates for filing grievances in good faith. Hardin Aff. ¶ 5.

47. Officers making threats against inmates, harassing, using racial language, and retaliation are all grievable issues and must be pursued through the procedures set forth in OP 866.1 prior to filing a lawsuit. Hardin Aff. ¶ 6.

48. Pursuant to OP 866.1, Regular Grievances are to be submitted within 30 calendar days from the date of the incident. Prior to submitting a Regular Grievance, the inmate must demonstrate that he has made a good faith effort to informally resolve his complaint. This may be

accomplished by submitting an Informal/Written Complaint[5] form to the appropriate department head.  Prison staff should respond to the inmate's Informal/Written Complaint within 15 calendar days to ensure that the informal response is provided prior to the expiration of the 30-day period during which an inmate may file his Regular Grievance.  The filing of an Informal/Written Complaint alone does not satisfy the exhaustion requirement.  Hardin Aff. ¶ 7.

49. When submitting a formal Regular Grievance, the inmate must attach any required documentation to demonstrate his attempt to informally resolve the issue, such as attaching a copy of his Informal/Written Complaint.  Only one issue per grievance form is addressed.  Regular Grievances must be appealed through all available levels of review to satisfy the requirement of exhaustion before filing a lawsuit.  Hardin Aff. ¶ 8.

50. Those Regular Grievances that do not meet the filing requirements of OP 866.1 are returned to the inmate within 2 working days from the date of receipt noting the reason for return on the intake section of the grievance form.  Reasons for which a Regular Grievance may be rejected at intake include, but are not limited to, more than one issue per grievance, expired filing period, repetitive, request for services, etc.  The inmate is instructed how to remedy any problems with the Regular Grievance when feasible.  A copy is made of all Regular Grievances returned to the inmate with the justification for return noted on the second page of the grievance form.  If an inmate wishes review of the intake decision on any Regular Grievance, he may

[5] In the versions of VDOC OP 866.1 with effective dates of July 1, 2013 and July 1, 2016, the first written step of the grievance process was to file what was called an "Informal Complaint." Under the policy in effect on January 1, 2021, the title of the "Informal Complaint" was changed to "Written Complaint." Accordingly, throughout Ms. Hardin's Affidavit and this Memorandum, the term "Informal/Written Complaint" refers to the document that must be filed as the first written (and informal) step of VDOC's grievance process. The change to the title of the form did not reflect a substantive change to this step of the grievance process. Hardin Aff. n.3.

send the Regular Grievance to the Regional Ombudsman for review.  There is no further review of the intake decision.  Appealing the intake decision does not satisfy the exhaustion requirement.  Hardin Aff. ¶ 9.

### *Facts about how Informal/Written Complaints are processed, VDOC Grievance Reports, and duties of the Institutional Grievance Coordinator*

51. After the Informal/Written Complaint or Regular Grievance is picked-up at Keen Mountain, it is taken to the Grievance Office where it is date stamped and logged into CORIS, VDOC's inmate database, and a Grievance Receipt is issued to the inmate.  Inmates are not permitted in the Grievance Office and are not present when Informal/Written Complaints are received there and processed.  Informal/Written Complaints and Regular Grievances are not accepted by staff to be delivered to the Grievance Office or to the Grievance Coordinator.  An inmate must place his Informal/Written Complaint or Regular Grievance in a Grievance mailbox for it to be received by the Grievance Office.  Hardin Aff. ¶ 17.

52. After the Informal/Written Complaint is logged into CORIS, the Informal/Written Complaint is then forwarded to the appropriate individual for a response.  If an inmate raises allegations against a specific officer in an Informal/Written Complaint, that Informal/Written Complaint would be forwarded to the officer's supervisor for a response. For example, if an inmate had filed an Informal/Written Complaint about an Officer Smith, after the Informal/Written Complaint was logged into CORIS, it would be sent to Officer Smith's supervisor for a response.  However, as stated, the Informal/Written Complaint would *first* be logged into CORIS before being forwarded, and therefore would be reflected on the inmate's Grievance Report.  Hardin Aff. ¶ 18.

53. An inmate's Grievance Report is a VDOC document that reflects all of an inmate's Informal/Written Complaint(s), accepted Regular Grievances, and appeals to Level II that have been logged into CORIS by the Grievance Office.  Hardin Aff. n.6 and ¶ 13.

54. Ms. Hardin has never thrown away or destroyed any inmate's Informal/Written Complaint or Regular Grievance that was submitted to the Grievance Office, and she has never thrown away or destroyed any Informal/Written Complaint or Regular Grievance submitted by Haynie.  It was, and remains, her job duties to retrieve Informal/Written Complaints and Regular Grievances from the Grievance mailboxes at Keen Mountain, and to process them pursuant to VDOC's OP 866.1.  She is unaware of any issues that Haynie may have had with any VDOC employees at Keen Mountain, and she would have no reason to throw away or destroy Haynie's grievances.  Doing so would have been a violation of her job responsibilities, and she could face discipline as a VDOC employee for having done so. Hardin Aff. ¶ 20.

55. If Haynie had filed an Informal/Written Complaint regarding his allegations against Defendants Dye, Owens, Squier and Deel and for whatever reason did not receive a Grievance Receipt, he simply had to send Ms. Hardin a Facility Request form asking for a copy of the Grievance Receipt.   She would have checked CORIS to determine if there was a Grievance Receipt for the Informal/Written Complaint, and Ms. Hardin would have printed the Grievance Receipt for him and sent it back.  Haynie would have then needed to submit the Grievance Receipt in lieu of the Informal/Written Complaint with a Regular Grievance to the Grievance Office for the Regular Grievance to be accepted at intake.  Hardin Aff. ¶ 21.

56. If an inmate sends Ms. Hardin a Facility Request form asking for a copy of a Grievance Receipt, or for any other information, it is her practice to make a copy of that Facility Request form and keep it in the inmate's Grievance File.  She then sends the Facility Request form,

with her response, back to the inmate. Ms. Hardin has checked Haynie's Keen Mountain Grievance File for copies of any Facility Request form(s) requesting a Grievance Receipt, or any other information. There are not any copies of any Facility Request form(s) from Haynie in his Grievance File at Keen Mountain. Hardin Aff. ¶ 22.

### *Facts about Haynie's failure to exhaust his*
### *allegations against Owens, Squier, Deel and Dye*

57.  VDOC records document that Haynie was incarcerated at Keen Mountain from November 18, 2020, until February 7, 2023, when he was transferred to Greensville Correctional Center, a VDOC facility. Ms. Hardin has reviewed his Grievance File maintained at Keen Mountain for any Informal/Written Complaints and/or Regular Grievances related to his allegations against Defendants Dye, Owens, Squier and Deel. Hardin Aff. ¶ 12.

58. Attached to Ms. Hardin's Affidavit as Enclosure B is a copy of Haynie's Grievance Report for the period of January 1, 2021, through December 31, 2022. A Grievance Report is a VDOC document that logs all Informal/Written Complaints, Regular Grievances that were accepted at intake, and appeals to Level I and Level II of Regular Grievances that have been filed by an inmate and which have been logged into CORIS, VDOC's inmate database, by the Grievance Office. A Grievance Report, however, does not reflect Regular Grievances that were rejected at intake. Therefore, any Informal/Written Complaints, accepted Regular Grievances, and appeals that Haynie filed between January 1, 2021, through December 31, 2022, are reflected on his Grievance Report. Hardin Aff. ¶ 13 and Encl. B.

59. To properly exhaust administrative remedies regarding Haynie's allegations that Defendants Dye, Owens, Squier and Deel threatened him, used racial language, threatened to plant a weapon in Haynie's cell, etc., at Keen Mountain, Haynie was required to submit an Informal/Written Complaint to Keen Mountain about his allegations, and then follow-up that

Informal/Written Complaint with Regular Grievance(s), and appeal those Regular Grievance(s) through Level II. Based upon Ms. Hardin's thorough review of Haynie's Grievance File, Haynie did not do this for any of his allegations about Defendants Dye, Owens, Squier and Deel. There are no Informal/Written Complaints or Regular Grievances, either accepted or rejected at intake, pertaining to Defendants Dye, Owens, Squier or Deel, or Haynie's allegations against them, in Haynie's Keen Mountain Grievance File, or reflected on his Grievance Report.[6] Hardin Aff. ¶ 14 and Encl. B.

60. Pursuant to Ms. Hardin's review of Haynie's Grievance File and Grievance Report, Haynie did not follow the procedures set forth in VDOC OP 866.1 to properly exhaust his administrative remedies with respect to his allegations against Defendants Dye, Owens, Squier and Deel. He did not even take the first step of the grievance process by filing an Informal/Written Complaint about his allegations. If Haynie had filed an Informal/Written Complaint about any of his allegations against Dye, Owens, Squier and Deel, this would be reflected on his Grievance Report, but it is not. Hardin Aff. ¶ 19 and Encl. B.

*Facts about Haynie's failure to exhaust his assault claim against Defendant Ashby*

61. To properly exhaust administrative remedies regarding Haynie's allegations that Defendant Ashby assaulted and/or threatened the Plaintiff at Keen Mountain, Haynie was required to submit an Informal/Written Complaint to Keen Mountain about his allegations, and then follow up that Informal/Written Complaint with a Regular Grievance, and appeal that Regular Grievance through Level II. Supp. Hardin Aff. ¶ 7.

---

[6] Haynie's Grievance Report reflects that Haynie has filed Informal/Written Complaint(s) about Officer Ashby and other VDOC employees. Hardin Aff. n.4.

62. Based upon Ms. Hardin's thorough review of Haynie's Grievance File and Grievance Report, Haynie did not exhaust his administrative remedies regarding his allegations that Defendant Ashby assaulted and/or threatened the Plaintiff because Haynie only filed an Informal/Written Complaint about Mr. Ashby but did not follow it up with a Regular Grievance. Had Haynie filed a Regular Grievance related to his allegations against Defendant Ashby and it was accepted at intake, this would be reflected on his Grievance Report, but it is not. Supp. Hardin Aff. ¶ 8; Hardin Aff. Encl. B.

63. Specifically, Haynie filed Informal/Written Complaint, Log No. KMCC-21-INF-02629 wherein he alleged that on a certain day, Mr. Ashby came to Haynie's cell and called Haynie a "cry baby bitch." Mr. Haynie was provided a response to Informal/Written Complaint, Log No. KMCC-21-INF-02629 on December 14, 2021. A copy of Informal/Written Complaint, Log No. KMCC-21-INF-02629, and the response that Haynie received, is attached to Ms. Hardin's Supplemental Affidavit as Enclosure A. Supp. Hardin Aff. ¶ 9 and Encl. A.

64. As stated, Ms. Hardin's review of Haynie's Grievance File and Grievance Report reveals that Haynie did not follow Informal/Written Complaint, Log No. KMCC-21-INF-02629 up with a Regular Grievance that was either accepted or rejected at intake. Had Haynie filed a Regular Grievance related to his allegations against Defendant Ashby and it was accepted at intake, it would be reflected on his Grievance Report, but it is not. Supp. Hardin Aff. ¶ 10; Hardin Aff. Encl. B.

65. Ms. Hardin has also reviewed Haynie's Grievance File at Keen Mountain for any copies of any accepted or rejected Regular Grievances related to his allegations against Defendant Ashby. It has been Keen Mountain's long-standing practice to make copies of inmates' Regular Grievance(s), and to keep those copies in an inmate's Grievance File. As stated, Ms.

Hardin has reviewed Haynie's Keen Mountain Grievance File for any copies of any accepted or rejected Regular Grievance related to Haynie's allegations against Defendant Ashby. There is not any copy of any accepted or rejected Regular Grievance in Haynie's Grievance File related to his allegations that Defendant Ashby assaulted Haynie and/or threatened him. Supp. Hardin Aff. ¶ 11.

**ARGUMENT**

I.   **Defendants Ashby, Owens, Squier, Deel, and Dye are entitled to summary judgment as to the Plaintiff's First Amendment claims, and Defendant Ashby is entitled to summary judgment as to the Plaintiff's assault claim.**

   *a.  The Plaintiff failed to exhaust his administrative remedies with respect to his First Amendment claims against Ashby, Owens, Squier, Deel and Dye, and the Plaintiff failed to exhaust his assault claim against Ashby.*

As an initial matter, the Plaintiff failed to exhaust his First Amendment allegations that Defendants Ashby, Owens, Squier, Deel, and Dye threatened the Plaintiff, or called him racial slurs, prior to filing this lawsuit, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Likewise, the Plaintiff failed to exhaust his assault allegations against Defendant Ashby. For this reason alone, these Defendants are entitled to summary judgment.

The United States Supreme Court has held that exhaustion under the PLRA is mandatory. *Jones v. Bock*, 549 U.S. 199, 199 (2007). The Court has further held that the PLRA requires "proper exhaustion," meaning that a plaintiff must "us[e] all steps that the agency holds out, and do[] so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). Thus, "proper exhaustion" requires "compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. These "critical

22

procedural rules" specifically include grievance timing requirements, for, otherwise, "a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time," and, following rejection of the grievance as untimely, "proceed directly to federal court." *Id.* at 95. The PLRA was not intended to "create such a toothless scheme." *Id.*

Here, as explained by Keen Mountain's Institutional Grievance Coordinator Ms. Hardin, to properly exhaust administrative remedies under VDOC OP 866.1, Haynie was required to submit an Informal/Written Complaint to Keen Mountain about his allegations, and then follow-up that Informal/Written Complaint with a Regular Grievance, and appeal that Regular Grievance through Level II. Hardin Aff. ¶ 14. When an inmate files an Informal/Written Complaint at Keen Mountain, it is received in the Grievance Office where it is date stamped and logged into CORIS, VDOC's inmate database. Hardin Aff. ¶¶ 16-17. According to Haynie's Grievance Report—which reflects all of the Informal/Written Complaints logged into CORIS by the Grievance Office—Haynie did not take the first step of VDOC's grievance procedure by filing any Informal/Written Complaint about any of his allegations against Defendants Squier, Owens, Deel, or Dye. Hardin Aff. ¶¶ 16-19 and Encl. B. Had Haynie filed any Informal/Written Complaint about his allegations against Defendants Squier, Owens, Deel, or Dye at Keen Mountain, that Informal/Written Complaint would be reflected on his Grievance Report, but it is not. Hardin Aff. ¶ 19 and Encl. B. Although Haynie's Grievance Report details that Haynie filed numerous other Informal/Written Complaints that were received and processed by the Grievance Office, Haynie did not file a single Informal/Written Complaint about his allegations against Defendants Squier, Owens, Deel, or Dye at Keen Mountain. Hardin Aff. ¶ 19 and Encl. B; Hardin Aff. n.4. The evidence is that Plaintiff never even took the first step of VDOC's grievance process

in an attempt to exhaust his administrative remedies against Defendants Squier, Owens, Deel, or Dye.

Moreover, the Plaintiff has not produced any copies of any Informal/Written Complaints that he allegedly filed against Defendants Squier, Owens, Deel, or Dye, or any Grievance Receipts demonstrating submission of such.[7]  To the extent that the Plaintiff alleges that he did submit an unidentified Informal/Written Complaint about any of his allegations against Defendants Owens, Squier, Deel, and/or Dye but that he never received a response to it and was not issued a Grievance Receipt, the Court may consider the "presumption of regularity" under these circumstances.  In the absence of any direct evidence indicating receipt or non-receipt of documents or any other evidence as to what happened to a purported document, courts apply the presumption of regularity. This presumption of regularity attaches to state agency action.  *See United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("[I]n the absence of clear evidence to the contrary, courts presume that [government agents] have properly discharged their official duties." (citation omitted)); *United States Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001) ("[A] presumption of regularity attaches to the actions of Government agencies").  The Fourth Circuit has recognized this presumption to assume proper governmental actions in the absence of clear evidence to the contrary. *See, e.g., Almy v. Sebelius*, 679 F.3d 297, 309 (4th Cir. 2012); *see also Mira-Avila v. Barr*, 756 F. App'x 329, 331 (4th Cir. 2019).  Further, the Fourth Circuit has applied this presumption of regularity to prison records and proceedings. *See Craddock v. Rhodes*, 833 F.2d 1004, No. 87- 7513, 1987 WL 39048, at *1 (4th Cir. Nov. 13, 1987).

The presumption of regularity holds that if Haynie had filed an Informal/Written Complaint

---

[7] As explained by Ms. Hardin, when an inmate files an Informal/Written Complaint at Keen Mountain, he is issued a Grievance Receipt by the Grievance Office demonstrating submission of the Informal/Written Complaint. Hardin Aff. ¶ 17.

24

about any of his allegations against Owens, Squier, Deel, or Dye, that Informal/Written Complaint would be reflected on his Grievance Report. Hardin Aff. ¶ 19 and Encl. A.  As stated, Haynie's Grievance Report reflects that he did *not* file a any such Informal/Written Complaint. Hardin Aff. ¶ 19 and Encl. A.  The evidence and presumption are therefore that the Plaintiff did not take the first step of VDOC's grievance procedure exhaust his administrative remedies as required by the PLRA as to his claims against Squier, Owens, Deel, and Dye.   In very similar circumstances, courts have found that it is proper to grant summary judgment to prison defendants on the issue of exhaustion under the presumption of regularity where there is evidence that if the inmate had submitted a prison grievance, it would be documented in prison records, but it is not.  *See Whitten v. Mays*, No. 7:23-CV-00399, 2025 WL 320951, at *5 (W.D. Va. Jan. 28, 2025) (applying presumption of regularity to find that inmate plaintiff failed to exhaust because VDOC had no record of having received his alleged Level II appeal); *Morgan v. Young*, No. 5:23-00101, 2024 WL 3799503, at *8 (S.D.W. Va. June 21, 2024), *R&R adopted sub nom. Morgan v. Young*, No. 5:23-CV-00101, 2024 WL 3796545 (S.D.W. Va. Aug. 13, 2024) (explaining that "[t]he BOP's records are subject to the presumption of regularity, there is no record of Plaintiff's fully exhausting any remedy except from Remedy ID No. 992184, and Plaintiff has not submitted competent evidence to overcome this presumption.").

Like all his claims against Defendants Owens, Squire, Deel, and Dye, the Plaintiff also failed to exhaust his First Amendment and assault allegations against Defendant Ashby as required by the PLRA.  Haynie did not exhaust his administrative remedies regarding his allegations that Defendant Ashby assaulted and/or threatened the Plaintiff because Haynie only filed an Informal/Written Complaint, Log No. KMCC-21-INF-02629, about Mr. Ashby but did not follow it up with a Regular Grievance as required by VDOC OP 866.1.  Had Haynie filed a Regular

Grievance related to his First Amendment or assault allegations against Defendant Ashby and it was accepted at intake, this would be reflected on his Grievance Report, but it is not. Supp. Hardin Aff. ¶ 8; Hardin Aff. Encl. B. 9. And, it has been Keen Mountain's long-standing practice to make copies of both accepted and rejected Regular Grievance(s), and to keep those copies in an inmate's Grievance File. Ms. Hardin has reviewed Haynie's Keen Mountain Grievance File for any copies of any accepted or rejected Regular Grievance related to Haynie's First Amendment and assault allegations against Defendant Ashby. There is not any copy of any accepted or rejected Regular Grievance in Haynie's Grievance File related to his allegations that Defendant Ashby assaulted Haynie and/or threatened him. Hardin Aff. ¶ 11.

The evidence in this case is that although the Plaintiff filed an Informal/Written Complaint related to his First Amendment and assault allegations against Defendant Ashby, the Plaintiff did not follow-up up the complaint with a Regular Grievance as required by VDOC OP 866.1. Further, the presumption of regularity again demonstrates that Ashby is entitled to judgment based upon the Plaintiff's failure to exhaust. Had the Plaintiff filed any Regular Grievance at Keen Mountain that was accepted or rejected at intake, a copy of it would be kept in his Grievance File. There is not a copy of any Regular Grievance field by the Plaintiff related to his First Amendment or assault allegations against Ashby. The evidence in this case, and the presumption of regularity, demonstrate that Defendant Ashby is entitled to judgment as a matter of law based upon the Plaintiff's failure to exhaust. *See, e.g., Whitten*, No. 7:23-CV-00399, 2025 WL 320951, at *5; *Morgan*, 2024 WL 3799503, at *8 (S.D.W. Va. June 21, 2024), *R&R adopted sub nom. Morgan v. Young*, No. 5:23-CV-00101, 2024 WL 3796545.

In all, the evidence in this case is that the Plaintiff did not even take the first step of VDOC's grievance procedure in an attempt to exhaust his allegations against Defendants Squier, Owens,

Deel, and Dye by filing an Informal/Written Complaint at Keen Mountain.  If the Plaintiff had

filed an Informal/Written Complaint against any of these Defendants, it would be reflected on his

Grievance Report, but it is not.  Likewise, although the Plaintiff filed an Informal/Written

Complaint related to his First Amendment and retaliation allegations against Ashby, he did not

follow it up with a Regular Grievance as required by VDOC's grievance procedure.  The evidence

in this case and the presumption of regularity hold that the Plaintiff failed to exhaust his

administrative remedies as to his First Amendment allegations against Defendants Ashby, Owens,

Squier, Deel, and Dye, and the Plaintiff's assault allegations against Ashby, which is mandated by

the PLRA.  *Jones*, 549 U.S. at 199, 199.  For this reason alone, Defendants Squier, Owens, Deel,

and Dye are entitled to judgment as a matter of law as to the Plaintiff's First Amendment claims

against them, and Defendant Ashby is entitled so summary judgment as to the Plaintiff's First

Amendment and assault claims.

> **b. The record establishes that Defendants Ashby, Squier, Owens, Deel, and Dye did
> not retaliate against the Plaintiff because the Plaintiff suffered no adverse action
> that affected the Plaintiff's First Amendment rights.**

To properly establish a First Amendment claim of retaliation, a Plaintiff must demonstrate

that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some

action that adversely affected the plaintiff's First Amendment rights; and (3) there was a causal

relationship between the protected activity and the defendant's conduct.  *Martin v. Duffy*, 977 F.3d

294, 299 (4th Cir. 2020).  He must show that the adverse action caused "something more than a

'de minimis inconvenience' to h[is] exercise of First Amendment rights." *Constantine v. Rectors

& Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005) (citation omitted).

In the present case, the Plaintiff's First Amendment retaliation claims against Defendants

Ashby, Squier, Owens, Deel, and Dye fail as a matter of law because the Plaintiff cannot establish

that he suffered any adverse action that affected his First Amendment rights.  Under the second *Martin* element, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine*, 411 F.3d at 500.  Because the standard is objective, rather than subjective, the fact that a plaintiff has not, in fact, been deterred from continuing in his protected activity is a factor that the court can consider.  *Id.* at 500.

Here, the Plaintiff has admitted that Defendants Ashby, Owens, Squier, Deel, and Dye did not prevent him from filing any lawsuits.  (Haynie RFP Resp. Nos. 1-6.)  And, in response to Interrogatories from the Defendants asking the Plaintiff to identify what First Amendment activity he was prevented from engaging in as a result of his allegations against Defendants Ashby, Owens, Squier, Deel, and Dye, the Plaintiff stated that he was prevented from filing prison grievances and complaints.  (Haynie ROG Resp. Nos. 18-23.).  But filing prison grievances and complaints, alone, are *not* protected First Amendment activities.  The Fourth Circuit long ago held that there "is no constitutional right to participate in [prison] grievance proceedings." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).  Thus, a prison employee is "not required under the Constitution to provide access to a grievance process." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017).  Pursuant to this authority, district courts in the Fourth Circuit have found that allegations that a prison employee prevented an inmate from filing prison grievances does *not* violate the First Amendment.  *See Parks v. Holbrook*, No. 7:23-CV-00585, 2024 WL 4126079, at *4 (W.D. Va. Sept. 9, 2024) (dismissing inmate's First Amendment claims against prison employees who were alleged to have thrown away the inmate's prison grievances); *Norwood v. Jividen*, No. 2:20-CV-00299, 2023 WL 2624176, at *15 (S.D.W. Va. Feb. 28, 2023) (dismissing inmate's First Amendment claim where he alleged that prison employees tampered with his prison grievances),

R&R adopted, No. 2:20-CV-00299, 2023 WL 2624169 (S.D.W. Va. Mar. 23, 2023); *DeFour v. White*, No. 7:22CV00703, 2024 WL 1337203, at *12 (W.D. Va. Mar. 28, 2024) (dismissing inmate's claim that prison employee interfered with the prison grievance procedure by denying the inmate grievance forms). This case is no different.

Under the *Martin* analysis, and pursuant to *Booker*, what *is* a First Amendment right is the filing of a lawsuit and to be free from retaliation for filing grievances. But in the present, the Plaintiff has admitted that Defendants Ashby, Squier, Owens, Deel, and Dye did not prevent him from filing any lawsuits and these Defendants did not retaliate against the Plaintiff at all. Although the Plaintiff alleges that these Defendants made various threats against him, none of threats were ever accomplished. It has long been held that "[m]ere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983." *Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005); *see also Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D. N.Y. 1998) (holding "verbal harassment or profanity alone, 'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983"). The record establishes that the Plaintiff suffered, at most, only a "'de minimis inconvenience' to h[is] exercise of [his] First Amendment rights." *Constantine*, 411 F.3d 500.

In all, the Plaintiff fails to establish any First Amendment retaliation claim against Defendants Ashby, Owens, Squier, Deel and Dye under *Martin*. The record establishes that the Plaintiff did not suffer any adverse action that affected the Plaintiff's First Amendment rights because the Plaintiff alleges only that Defendants Ashby, Squier, Owens, Dye, and Deel made unaccomplished threats that resulted in him not filing prison grievances. But an inmate does not have a First Amendment right to file prison grievances at all. At most, the Plaintiff establishes

only a *de minimis* inconvenience to his First Amendment rights. Accordingly, Defendants Ashby, Squier, Owens, Deel, and Dye are entitled to judgment as a matter of law as to the Plaintiff's First Amendment retaliation claims against them.

### c. Defendants Ashby, Squier, Owens, Deel, and Dye are entitled to Qualified Immunity as to the Plaintiff's First Amendment retaliation claims.

Even assuming that the Plaintiff has exhausted his allegations against Defendants Ashby, Squier, Owens, Deel, and Dye and that he suffered more than a *de minimis* inconvenience to his First Amendment rights under the *Martin* analysis, these Defendants are entitled to Qualified Immunity in this case. The Defendants are unaware of any relevant and published case law which has clearly established that unaccomplished threats not to file prison grievances, alone, are adverse enough to support a First Amendment claim of retaliation. Defendants Ashby, Squier, Owens, Deel, and Dye are therefore entitled to Qualified Immunity as to the Plaintiff's First Amendment retaliation claims.

Qualified Immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985). Government officials are entitled to the defense of Qualified Immunity unless a § 1983 claim satisfies the following two-prong test: (1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a "clearly established" right "of which a reasonable person would have known." *See Mellen v. Bunting*, 327 F.3d 355, 365 (4th Cir. 2003) (citing *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *Harlow*, 457 U.S. at 818 (internal quotation marks omitted)); *see also Wilson*, 526 U.S. at 609.

When determining whether a claim is barred by Qualified Immunity, the Court must "decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand what he is doing is unlawful." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal quotation marks omitted); *see Wilson v. Layne*, 526 U.S. 603, 614–615 (1999). Where there is an open question as to whether certain conduct transgresses constitutional boundaries, Qualified Immunity applies. *See Taylor v. Barkes*, 575 U.S. 822, 825 (2015). While "a case directly on point" is not necessary for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (internal quotation marks omitted).

To determine whether a right was clearly established in the Fourth Circuit, Courts look to "decisions of the Supreme Court, [the U.S. Court of Appeals for the Fourth Circuit], and the highest court of the state in which the case arose," and ordinarily need look no further. *Hill v. Crum*, 727 F.3d 312, 322 (4th Cir. 2013) (internal quotation marks omitted). Further, not just any case from the Fourth Circuit is sufficient to qualify as clearly established. Unpublished opinions "are not even regarded as binding precedent in [the Fourth] circuit" and thus they "cannot be considered in deciding whether particular conduct violated clearly established law for purposes of adjudging entitlement to qualified immunity." *Booker,* 855 F.3d at 543. Nonetheless, recently, in *Garrett v. Clarke*, the Fourth Circuit stated that even if the law was not clearly established in a specific jurisdiction, a "robust consensus" of persuasive authority from other jurisdictions may demonstrate the existence of a rule 'that every reasonable official would know[]" for Qualified Immunity purposes. 74 F.4th 579 (4th Cir. 2023).

Finally, Qualified Immunity is applicable to inmate First Amendment claims of retaliation. *See Allen v. Shelton*, No. 7:22-CV-00408, 2023 WL 6389807, at *12 n.17 (W.D. Va. Sept. 29, 2023) (holding it was clearly established that Defendant's alleged conduct was sufficiently adverse to avoid Qualified Immunity); *Harris v. Scott*, No. 1:15-CV-550, 2017 WL 4230568, at *5 (W.D. Mich. Sept. 25, 2017) (explaining that "none of the actions complained of by plaintiff were so clearly adverse that existing precedent at the time each defendant acted placed the unlawfulness of the official's conduct 'beyond debate'").    Accordingly, when addressing Qualified Immunity in the retaliation context, there must be case law factually analogous to put a Defendant on notice that the actions he allegedly took were clearly established as being sufficiently adverse under the First Amendment at the time that he took that action.    *Allen*, 2023 WL 6389807, at *12 n.17; *Harris*, 2017 WL 4230568, at *5.

As explained herein, the Plaintiff alleges that Defendants Ashby, Squier, Owens, Deel, and Dye made various threats, or used racial slurs, against the Plaintiff but that these threats were never accomplished.    Plaintiff further alleges that as a result of these threats, he stopped filing prison grievances.    However, the Defendants are unaware of any U.S. Supreme Court, Fourth Circuit, or Supreme Court of Virginia case law which has held that unaccomplished threats that prevent an inmate from filing prison grievances, without more, are sufficiently adverse to support a First Amendment claim of retaliation.[8]    In fact, it has long been held that "[m]ere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983."    *Henslee*, 153 F.

---

[8] In the Court's Memorandum Opinion and Order ruling upon the Defendants' Motion to Dismiss, the Court cited to *Stevens v. Clarke*, No. 7:21-CV-00570, 2022 WL 2757637, at *6 (W.D. Va. July 14, 2022) and *Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010) for the proposition that specific verbal threats are sufficiently adverse to state a First Amendment retaliation claim.    (ECF No. 38, at 8.)    However, *Stevens* and *Mateo* are insufficient at the summary judgment stage to defeat Qualified Immunity because they are not cases from the U.S. Supreme Court, a federal court of appeals, or the Supreme Court of Virginia.

App'x at 180; *see also Shabazz*, 994 F. Supp. at 474.

Qualified Immunity shields government employees from liability for damages so long as "the law was sufficiently clear that *every reasonable official* would understand what he is doing is unlawful." *Wesby*, 583 U.S. 48, 63 (emphasis added). Here, the law was simply not so clearly established in 2022—the year in which Defendants Ashby, Squier, Owens, Deel, and Dye are alleged to have made threats to the Plaintiff—that every reasonable prison officer would know that unaccomplished threats, without more, are sufficiently adverse under the First Amendment's retaliation analysis. In fact, there does not appear to be any clearly established and published case law *as of today* that would put any VDOC correctional officer on such notice.[9] At most, here, the Plaintiff has alleged only "mere threats" that the Fourth Circuit has held does not violate an inmate's First Amendment rights. *Henslee*, 153 Fed. App'x at 180.[10]

In all, Defendants Ashby, Owens, Squier, Deel, and Dye are entitled to Qualified Immunity as to the Plaintiff's claims of retaliation against them. There is not any relevant case law which has held that unaccomplished threats are sufficiently adverse to establish a First Amendment retaliation claim. Accordingly, Defendants Ashby, Squire, Owens, Deel, and Dye respectfully request that the Court grant them Qualified Immunity and dismiss the Plaintiff's First Amendment claims for damages against them.

---

[9] To be sure, if prison officials impede a prisoner's attempts to exhaust by denying that inmate the grievance forms, threatening an inmate not to file grievances, or otherwise preventing an inmate from accessing the prison grievance procedure, administrative remedies are not "available" to the inmate and he may be excused from exhaustion requirements. *See Washington v. Rounds*, 223 F. Supp. 3d 452, 459 (D. Md. 2016). However, threatening an inmate not to access a prison's grievance procedure—in and of itself—does not violate the First Amendment, as detailed herein.

[10] Outside of the Fourth Circuit, the Third Circuit has held that "verbal threats and [a] few gestures of racial harassment . . . are not sufficiently adverse to support a retaliation claim[.]" *Dunbar v. Barone*, 487 Fed. App'x 721, 723 (3d Cir. 2012).

### d. To the extent that the Plaintiff's First Amendment claims can be read as prior restraint claims, the Plaintiff fails to state any such claim and Defendants Ashby, Owens, Squier, Deel, and Dye are entitled to Qualified Immunity.

To the extent that the Plaintiff's First Amendment claims against Defendants Ashby, Squier, Owens, Deel, and Dye can be read as claims of prior restraint, for many of the reasons detailed above, a prior restraint claim also fails as a matter of law. Specifically, the Plaintiff cannot establish any of the elements of a prior restraint claim because he cannot establish that Defendants Ashby, Owens, Squier, Deel, and Dye prevented him from engaging in speech that is protected by the First Amendment. And, even if he could make such a showing, these Defendants are entitled to Qualified Immunity, for many of the same reasons detailed in response to the Plaintiff's retaliation claims. Accordingly, Defendants Ashby, Squier, Owens, Deel, and Dye respectfully request that the Court grant them summary judgment as to any prior restraint claims against them.

In *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009), the Seventh Circuit held that prison employees who alleged that they had been threatened not to testify against their colleagues at trial stated a First Amendment prior restraint claim. 578 F.3d 518, 520. The Court explained that there are three requirements for prior restraint claims. First, a Plaintiff must demonstrate that he was forbidden or threatened from expressing speech "that is protected under the first amendment[.]" *Id.* at 525. Second, a Plaintiff must demonstrate causation, namely, that the Plaintiff's protected speech was the but-for cause of any threats or actions for such speech. *Id.* And third, a Plaintiff must establish proof of damages, that is, lost income or "[l]esser threats, defamation, and battery [] . . . if these are the sort of harms that would cause a reasonable person to keep quiet." *Id.*

After *Fairley*, the U.S. District Court for the Southern District of Illinois applied *Fairley's* three-part analysis to an inmate Plaintiff. In *Parnell v. Lashbrook*, No. 16-CV-1144-NJR, 2017

34

WL 2876526, at *8 (S.D. Ill. July 6, 2017), the Court held that the inmate Plaintiff sufficiently pled a prior restraint claim against prison employees because the "plaintiff [] alleged he was threatened with the unjustified revocation of good conduct credit to deter him from filing a lawsuit."  It does not appear that the Fourth Circuit has addressed an inmate claim of First Amendment prior restraint at all.

In this case, however, the Plaintiff cannot establish any of the elements of a prior restraint claim under *Fairley* because he cannot establish that Defendants Ashby, Owens, Squier, Deel, or Dye prevented him from engaging in speech that is protected by the First Amendment.  In *Fairley* and *Parnell*, the Plaintiffs—both inmate and not—stated prior restraint claims because they alleged that they were threatened not to engage in protected speech.  The Plaintiffs in *Fairley* and *Parnell* alleged that they were threatened not to file a lawsuit or to testify at trial.  These are First Amendment protected activities.  Haynie in this case makes no such allegations.  Here, the Plaintiff alleges only that Ashby, Owens, Squier, Deel, and Dye threatened him not to file prison grievances, and therefore the Plaintiff did not file such grievances.  But, as explained, the Fourth Circuit has held that there "is no constitutional right to participate in [prison] grievance proceedings[,]" *Adams*, 40 F.3d at 75, and therefore, a prison employee is "not required under the Constitution to provide access to a grievance process."  *Booker.*, 855 F.3d at 541.  Pursuant to this authority, district courts in the Fourth Circuit have found that allegations that a prison employee prevented an inmate from filing prison grievances does *not* violate the First Amendment.  *See Parks*, 2024 WL 4126079, at *4;  *Norwood*, 2023 WL 2624176, at *15; *DeFour,* 2024 WL 1337203, at *12.

The Plaintiff also cannot establish causation and damages under *Fairley*.  As explained by *Fairley*, to succeed on any prior restraint claim, a Plaintiff must demonstrate both but-for causation and proof of damages, that is, lost income or "[l]esser threats, defamation, and battery [] . . . if

these are the sort of harms that would cause a reasonable person to keep quiet." *Fairley*, 578 F.3d at 525. Here, Haynie has suffered no damages as a result of his allegations against Defendants Ashby, Squier, Owens, Deel, and Dye. As the Court has already ruled, the Plaintiff has failed to establish that he was assaulted under Virginia law (ECF No. 38, at 9-10) and it cannot be said that a reasonable inmate would be deterred from filing prison grievances—because inmates do not have a constitutional right to file such grievances in the first place. In all, the Plaintiff's prior restraint claim fails under *Fairley*.

Finally, Ashby, Squier, Owens, Deel, and Dye are entitled to Qualified Immunity to the extent that any of the Plaintiff's claims can be read as prior restraint claims. Qualified Immunity is applicable to claims of prior restraint. *See, e.g., Garcia v. Montgomery Cnty.*, 145 F. Supp. 3d 492, 511 (D. Md. 2015) (granting Qualified Immunity to police officer on a prior restraint claim where it was not clearly established that citizens had a right to record officers in the routine public performance of their duties). Accordingly, when addressing Qualified Immunity in the prior restraint context, there must be case law factually analogous to put the Defendant on notice that the actions he took amounted to prior restraint at the time that he took that action. *See id.* The question then is whether the U.S. Supreme Court, Fourth Circuit, or Supreme Court of Virginia, in a published opinion, has addressed whether threatening an inmate not to file prison grievances *per se* amounts to an unconstitutional prior restraint. *Hill*, 727 F.3d at 322; *Booker*, 855 F.3d at 543. The resounding answer to this inquiry is that there is simply no such case law on point. The Defendants are unaware of any U.S. Supreme Court, Fourth Circuit, or Supreme Court of Virginia case law at all which has held that allegations like the Plaintiff's amount to prior restraint and *per se* violate an inmate's First Amendment rights. In fact, it does not appear that there is any case law wherein the U.S. Supreme Court, Fourth Circuit, or Supreme Court of Virginia has considered

a prior restraint claim in context of an inmate being prevented from filing prison grievances at all. Given the legal landscape under *Adams* and *Booker*, it cannot be said that it is clearly established that threating an inmate not to file prison grievances *per se* amounts to an unconstitutional prior restraint, as there is no relevant case law hinting otherwise.  For this reason alone, Defendants Ashby, Owens Squier, Deel, and Dye are entitled to Qualified Immunity as any prior restraint claims them.

### e.   The Plaintiff's allegations do not give rise to a cognizable state law claim of assault against Defendant Ashby.

Even putting aside the fact that the Plaintiff failed to exhaust his assault claim against Defendant Ashby, the Plaintiff's allegations against Ashby do not give rise to a cognizable state law claim of assault on the merits.  Specifically, in his Complaint, the Plaintiff alleges in a conclusory fashion that Ashby "made various threats" to the Plaintiff.  (ECF No. 1, ¶ 2.)  During his deposition, the Plaintiff testified that Ashby, among others, told the Plaintiff that if he didn't stop writing complaints, he was "gonna beat [Haynie's] black ass and put [him] in the hole and not let [Haynie] out or use the phone" if Haynie didn't stop writing up complaints. (Haynie Dep. Excerpt No. 1, Haynie Dep. 45:10-16.)  But as this Court has already found in this very case, such allegations do not give rise to a cognizable state law claim of assault.  (ECF No. 38, at 9-10.)

The Supreme Court of Virginia has explained that the elements of assault are (1) "an act intended to cause either [(a)] harmful or offensive contact with another person or [(b)] apprehension of such contact" (2) "that creates in that other person's mind a reasonable apprehension of an imminent battery."  *Koffman v. Garnett*, 265 Va. 12, 16, 574 S.E.2d 258 (2003) (citing Restatement (Second) of Torts § 21 (1965)).

Here, the Court has held that the Plaintiff's allegations do not give rise to any Virignia claim of assault under *Koffman* as to Defendants Owens, Squier, Deel, and Dye.  (ECF No. 38, at

9-10.)   The same is now true as to Defendant Ashby.  As explained by the Court, the Plaintiff's allegations do not plausibly allege that the threats made by Ashby put him in reasonable apprehension of imminent battery.  (*Id.* at 10.)   Accordingly, Defendant Ashby respectfully requests that the Court dismiss the Plaintiff's assault claim against him.

## II.    Defendants Ashby and Robinette are entitled to summary judgment as to the Plaintiff's Eighth Amendment claims.

### a.    The Plaintiff failed to retain a medical expert and he therefore cannot carry his burden at trial that the transportation caused his "bulging disc" and back pain.

In his Complaint, the Plaintiff alleges that as a result of the October 14, 2021 transportation he suffered a "bulging disc" in his back and back pain.  (ECF No. 1, ¶ 1.)  However, as explained by Haynie's medical provider at Keen Mountain, Nurse Practitioner Ball, as of February 2023, Haynie had *not* definitively been diagnosed with a "bulging disc" at all and Haynie had numerous pre-existing back conditions and diagnoses that could cause both bulging discs and pain in his back.  It is therefore Nurse Practitioner Ball's opinion that the October 14, 2021 transportation did not cause the Plaintiff's back issues.  Because the Plaintiff did not retain an expert to opine that the Plaintiff does, in fact, suffer from a bulging disc and that the October 21, 2021 transportation is what caused it and his back pain, he does not have any affirmative evidence upon which a jury can find that Defendants Ashby and Robinette were the but-for and proximate cause of the Plaintiff's injuries.  The Defendants are therefore entitled to summary judgment as to the Plaintiff's Eighth Amendment claims.

To establish a claim under Section 1983, a Plaintiff must demonstrate that: (1) a right conferred by the Constitution or the laws of the United States was violated and (2) the alleged violation was committed by a person acting under the color of state law. *See* 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988). Relevant to this inquiry, in individual capacity lawsuits,

Section 1983 imposes personal liability on anyone who causes a constitutional deprivation while acting under color of state law. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (explaining that "[o]n the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.") (emphasis in original). Therefore, "constitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (citation omitted).

In an analogous tort case wherein the Fourth Circuit examined how to prove proximate causation, the Fourth Circuit explained that "[s]ome injuries — such as bruises, lacerations, and broken bones — manifest in such an immediate and apparent manner that any observer can discern the causal relationship . . . But other injuries . . . are beyond the ability of a layman to attribute to a particular event unaided." *Taylor v. Shreeji Swami, Inc*., 820 Fed. App'x 174, 176 (4th Cir. 2020). Therefore, "whether a particular traumatic event caused a particular exacerbation [or injury] . . . , involves complicated medical questions far removed from the ordinary experience and knowledge of laymen." *Id*. at 178.

Following *Taylor*'s guidance, in a published opinion, the Eastern District of Virginia found that to prove proximate causation, a Plaintiff was required to put forth expert opinion to establish the Plaintiff's alleged pelvic prolapse was the result of a car accident. *Roop v. Desousa*, 660 F. Supp. 3d 477, 505 (E.D. Va. 2023). And—in a case in which the Plaintiff had a medical history similar to the Plaintiff here—the District Court of Maryland held that to prove proximate causation, expert opinion was required where the Defendant had put forth evidence demonstrating that the Plaintiff's back pain and suffering may have been the result of "age-related degenerative changes," a later motor cycle accident for which she was also treated for back injuries, or a fall at work when

she fell backwards while sitting in a chair. *Gatchell v. Walmart, Inc*., No. 19-CV-1649-PWG,

2021 WL 1017396, at *7 (D. Md. Mar. 17, 2021) (citation omitted).

In this case, the evidence is that the Plaintiff did not suffer a bulging disc or back pain

because of the October 14, 2021 transportation. As testified to by Nurse Practitioner Ball, the

Plaintiff had an x-ray in November 2021 that did not show any such bulging disc and he had not

been definitively diagnosed with such as late as February 2023. Rather, as found by Dr. Ward

with VCU's Department of Neurosurgery, the Plaintiff likely had arthritis at that time rather than

any bulging discs. Ball Decl. ¶ 30 and Encl. J. It is therefore Nurse Ball's opinion that Haynie

did not suffer a bulging disc due to the transportation because in her clinical experience such

injuries present themselves soon after any such traumatic event. Ball Decl. ¶ 29.

Further still, prior to the transportation, in November 2019, an x-ray of the Plaintiff's back

demonstrated "disc degeneration" at that time, likely as a result of the Plaintiff's lifting weights.

Ball Decl. ¶¶ 8-10; Ball Decl. Encl. A. Disc degeneration can be caused by aging or strenuous

activity and, alone, can cause bulging discs and back pain. Ball Decl. ¶¶ 10; 27. Moreover, Haynie

had been shot twice in his left leg prior to his incarceration. Haynie's medical records reflect that

Haynie complained often of pain in both his back and his leg. It is entirely possible that Haynie's

gunshot wounds in his leg have caused the pain that Haynie is experiencing in his back due to

nerve damage or muscle imbalances. Ball Decl. ¶ 32. Similarly, the Plaintiff has also been

diagnosed with epidural lipomatosis in his back. Ball Decl. ¶¶ 21; 24; Ball Encls. J and I. Epidural

lipomatosis is a condition where excessive fat tissue accumulates in the epidural space, the area

surrounding the spinal cord. Ball Decl. ¶ 32. This accumulation can compress the spinal cord

and nerves, leading to various symptoms, including pain. Ball Decl. ¶ 32.

The evidence in this case is that the Plaintiff did not suffer a bulging disc as a result of the October 14, 2021 transportation and that the Plaintiff had numerous pre-existing conditions and diagnoses that could cause back pain. Given this evidence, pursuant to *Taylor*, the Plaintiff was required to present expert medical testimony on the issue of the existence and causation of his alleged "bulging disc" and back pain, and that these injuries were the result of the October 14, 2021 transportation. 820 Fed. App'x 174, 178. The Plaintiff failed to do so.

At the summary judgment stage, once the moving party shows an absence of a genuine issue of material fact, the burden shifts to the non-movant to produce evidence creating a genuine issue of material fact. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). "[A] district court enter judgment against a party who . . . 'fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Id*. at 166-67 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The nonmoving party cannot create a genuine issue through mere speculation or the building of one inference upon another. *See, e.g., Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 570 (4th Cir. 2015). The non-moving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256-57 (1986). That a jury could simply disbelieve the uncontradicted evidence presented does not overcome summary judgment. *Id*. Even discredited testimony is not sufficient to overcome summary judgment. *Id*. Instead, the Plaintiff must present affirmative evidence. *Id*.

Without a medical expert to opine that the Plaintiff in-fact suffers from a bulging disc and that this bulging disc and the Plaintiff's back pain are the result of the October 14, 2021 transportation, the Plaintiff has *no affirmative evidence* upon which to establish that the

41

transportation was the proximate and but-for cause of his alleged injuries, which is required for constitutional torts.[11]  *Id*; *Evans*, 703 F.3d at 647.  He therefore cannot carry his burden at trial that the transportation is the but-for and proximate cause of his injuries.[12]  Accordingly, Defendants Ashby and Robinette are entitled to summary judgment as to the Plaintiff's Eighth Amendment claims.

> **b.  *Without an expert opinion, the Plaintiff cannot carry his burden under the Eighth Amendment's excessive force analysis because the Plaintiff's medical records reveal he suffered no other discernable injury.***

The Fourth Circuit has held that "rough ride" allegations should be analyzed under the Eighth Amendment's excessive force standard.  *Thompson v. Commonwealth*, 878 F.3d 89, 98, (4th Cir. 2017). Accordingly, "[a] prisoner bringing an Eighth Amendment excessive force claim must make two showings—one objective, the other subjective." *Alexander v. Connor*, 105 F.4th 174, 182 (4th Cir. 2024).

The subjective prong is "a demanding standard" that asks whether the officer acted with "a sufficiently culpable state of mind." *Id.* (quoting *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019)). To satisfy the subjective prong, the plaintiff must allege "wantonness in the infliction of pain." *Brooks*, 924 F.3d at 112. Whether a defendant acted with wantonness turns on "whether

---

[11] As a lay person with no medical training, the Plaintiff is unable to testify that he in-fact has bulging discs and back pain that were caused by the October 14, 2021 transportation.

[12] Likewise, the Plaintiff did not retain a mental health expert to opine as to the cause of his alleged Post-Traumatic Stress Disorder ("PTSD") that he allegedly suffered as a result of the transportation. (*See* ECF No. 1 ¶ 81.)  The Plaintiff testified at his deposition that he had experienced other traumatic events in his life, such as being shot and having an emotionally abusive relationship with his father, who also physically abused his mother.  (Haynie Dep. Excerpt No. 2, Haynie Dep. 61:5-11; Haynie Dep. Excerpt No. 3, Haynie Dep. 72:11-22; 73:1-6).  Plaintiff was required to retain an expert to opine that the alleged transportation was the proximate cause of, or exacerbated, his PTSD.  *See Taylor*, 820 Fed. App'x 174, 178 (holding that plaintiff was required to retain an expert to opine that her PTSD, depression, and anxiety were proximately exacerbated by her allegations that she was trapped in an elevator).

force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The Supreme Court has identified factors from which a defendant's subjective state of mind can be inferred:

> [T]he extent of injury suffered . . . [,] the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.

*Hudson*, 503 U.S. at 7 (cleaned up); *see also Brooks*, 924 F.3d at 116. While the severity of any injury factors into whether a defendant used excessive force, the force itself is what "ultimately counts." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). Nonetheless, the extent of injury is relevant in determining "the amount of force applied" and "whether the use of force could plausibly have been thought necessary." *Id.* at 37 (citation omitted).

The objective prong measures the gravity of the force employed; it "asks whether the force applied was sufficiently serious to establish a cause of action." *Freeman v. Coley*, 848 F. App'x 126 (4th Cir. 2021) (quoting *Brooks*, 924 F.3d at 112). Generally, only more than *de minimis* or nontrivial use of force is required. *Wilkins*, 559 U.S. at 38. However, "an inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins*, 559 U.S. at 37-38 (2010) (quoting *Hudson*, 503 U.S. at 9).

In this case, without an expert to opine on the existence, cause, and extent of Plaintiff's alleged bulging disc and back pain, the record establishes that the Plaintiff suffered "no discernible injury" because of the transportation. *Id.* The Plaintiff's medical records reveal that he was seen upon his return on October 14, 2021 by Keen Mountain's medical department. Ball Aff. Encl. A. Nurse Compton charted that she took the Plaintiff's temperature, which was 98.4 degrees (Fahrenheit) and that Haynie did not voice any medical complaints. Specifically, Nurse Compton

charted "[d]enies SX[13] of COVID. . . . Denies any injuries or medical needs at this time."  Ball

Decl. Encl. B.[14]    A couple of days later, the Plaintiff returned to Keen Mountain's medical

department with complaints of back pain and was treated.  Ball Decl. ¶ 11 and Encl. C.  The

Plaintiff was thereafter seen and treated extensively over the next year and a half for his back—he

was provided with numerous x-rays, special appointments, an MRI with two post evaluations, a

variety of pain medications and recommendations, and is currently undergoing physical therapy.

Ball Decl. ¶¶ 11-26 and Encls. B-J; Haynie Depo. Excerpt No. 2, Haynie Dep. 61:22.  But, aside

from his complaints about his back, the Plaintiff's medical records reveal that he suffered no other

discernable injury because of the October 14, 2021 transportation.    And, as explained above, the

Plaintiff did not retain an expert to testify as to existence, cause, and extent of his alleged bulging

disc and back pain as a result of the transportation, rendering him unable to present evidence on

this issue at trial.  Accordingly, what is left are the Plaintiff's medical records which reveal that he

suffered no other injury as a result of the transportation.  This entitles Defendants Ashby and

Robinette to summary judgment as to the Plaintiff's excessive force claims.  *See, e.g, Atkins v.*

*Glaser*, No. 1:18CV354, 2022 WL 1085000, at *7 (E.D. Va. Apr. 11, 2022) (granting summary

---

[13] "SX" is medical shorthand for "symptoms."  Ball Decl. n.1.

[14] To the extent that the Plaintiff may allege that his medical records are false or inaccurate, the
court may rely on the Plaintiff's medical records at summary judgment. *Green v. Jones*, No.
7:21CV00165, 2022 WL 4563538, at *6 (W.D. Va. Sept. 29, 2022) (explaining that "when
inmate's assertions are blatantly contradicted by [his] medical records, the court will rely on the
medical records."). Further, the Fourth Circuit has held that medical records are entitled to a
presumption of accuracy.  *Thomas v. Hogan*, 308 F.2d 355, 361 (4th Cir. 1962) ("There is good
reason to treat a hospital [or other medical] record entry as trustworthy. Human life will often
depend upon the accuracy of the entry, and it is reasonable to presume that a hospital [or other
medical provider] is staffed with personnel who competently perform their day-to-day tasks. To
this extent at least, hospital [or other medical] records are deserving of a presumption of accuracy
even more than other types of business entries.").

judgment to prison employees on plaintiff's excessive force claim because the plaintiff was seen by medical providers following the alleged transport and the plaintiff suffered no injury).

### c. Defendants Robinette and Ashby are entitled to summary judgment as to the Plaintiff's deliberate indifference claims.

Lastly, it appears that the Plaintiff has pled medical deliberate indifference claims against Defendants Robinette and Ashby.  (ECF No. 1 ¶ 86.)  In his Complaint, the Plaintiff alleges that, "[w]hen Mr. Haynie returned to prison later that night he never had his vitals checked and was not seen by medical."  (*Id*. ¶ 56.)  The Plaintiff further alleges in his Complaint that "staff at Keen Mountain Correctional Center [have] refused to treat Mr. Haynie's bulging disc" after the transportation.  (*Id*. ¶ 72.)  But the Plaintiff's allegations are astonishingly false.  Plaintiff was seen by Keen Mountain's medical department upon his return on October 14, 2021, and has been treated extensively since then for back and leg pain.  Defendants Ashby and Robinette are therefore entitled to summary judgment as to any Eighth Amendment medical deliberate indifference claims against them.

To establish a cognizable Eighth Amendment claim for denial of medical care, a Plaintiff must demonstrate that an official was deliberately indifferent to a serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Pfaller v. Amonette*, 55 F.4th 436, 445 (4th Cir. 2022).  A deliberate indifference claim has both an objective and subjective component. *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019).  In sum, "the plaintiff must demonstrate that the defendant prison official acted with 'deliberate indifference' (the subjective component) to the plaintiff's 'serious medical needs' (the objective component)." *Id*.  (citing *Estelle*, 429 U.S. at 104).  "To bring a constitutional claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or were indifferent to the prison physician's misconduct."

*Briscoe v. Moses*, W.D. Va. No. 7:06CV00752, 2007 WL 2456898, at *1 (W.D. Va. Aug. 24, 2007) (citing *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990)).

In this case, Defendants Ashby and Robinette, two non-medical prison employees, did not deny the Plaintiff medical care. Although the Plaintiff has pled that he "was not seen by medical" upon his return to Keen Mountain on October 14, 2021, this is blatantly false, as he was seen by a registered nurse upon his return and in the following days. Ball Decl. Encl. B and C. For the next several months, Nurse Practitioner Ball and other VDOC, VCU, and private practice medical providers provided extensive medical treatment to the Plaintiff for his back. The Plaintiff has received a variety of pain medications, x-rays, an MRI, visits with specialists, recommendations, and is currently undergoing physical therapy. Ball Decl. ¶¶ 11-26 and Encls. B-J; Haynie Depo. Excerpt No. 2, Haynie Dep. 61:22. The record establishes that the Plaintiff's allegations that he "was not seen by medical" after the transportation and has been denied subsequent medical care are inaccurate, at best. Defendants Ashby and Robinette did not deny the Plaintiff any medical care and they have not denied or interfered with any medical care provided to the Plaintiff since. To the extent that the Plaintiff disagrees with the medical care that has been provided to him, such a disagreement fails to state an Eighth Amendment violation. *Wright v. Collins,* 766 F.2d 841, 849 (4th Cir.1985). Accordingly, Defendants Ashby and Robinette are entitled to summary judgment as to the Plaintiff's medical deliberate indifference claims against them.

<u>CONCLUSION</u>

For all of the reasons detailed herein, the Defendants respectfully request that the Court grant them summary judgment in this action.

Respectfully submitted,

ASHBY, ET AL., DEFENDANTS.

By: s/ Ann-Marie White Rene
Ann-Marie White, AAG, VSB #91166
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
Phone: (804) 371-2084
Fax: (804) 786-4239
E-mail: arene@oag.state.va.us
*(Counsel for Defendants)*

## CERTIFICATE OF SERVICE

I hereby certify that on March 17th, 2025, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which automatically serves counsel of record:

Blake Weiner Law, PLLC
1806 Summit Avenue, Suite 300
Richmond, VA 23230
678-492-7629
Email: bweiner@blakeweinerlaw.com
(*Counsel for Plaintiff*)

By: s/ Ann-Marie White Rene
Ann-Marie White, AAG, VSB #91166
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
Phone:  (804) 371-2084
Fax:  (804) 786-4239
E-mail:  arene@oag.state.va.us
(*Counsel for Defendants*)