IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
**Abingdon Division**

WESLEY HAYNIE,

        Plaintiff,

v.

                                              Case No. 1:23-cv-000016

HAROLD CLARKE,

        Defendants.

## AFFIDAVIT

Commonwealth of Virginia, County of Buchanan, to-wit:

    H. HARDIN,[1] first being duly sworn, states as follows:

    1.    I am the Institutional Grievance Coordinator at Keen Mountain Correctional Center ("Keen Mountain") a Virginia of Department of Corrections ("VDOC") institution.   In this capacity, I am responsible for maintaining inmate Grievance Files at Keen Mountain.  I became the Institutional Grievance Coordinator at Keen Mountain in September 2022.  I replaced Kellie Breeding who was moving to another position at Keen Mountain around that time; however, due to training in my position in the Grievance Office, and Ms. Breeding's training in her new position, both of us worked as Grievance Coordinators at least until the end of November 2022.  Prior to becoming the Institutional Grievance Coordinator, I was the Assistant Warden's Secretary at Keen Mountain.  My duties in that position were to provide secretarial and other assistance to the Assistant Warden at the facility.

---

[1] My maiden last name is "Harr."

1

2.  I base the information contained in this affidavit on personal knowledge and records maintained in the regular and ordinary course of business.

3.  I understand that VDOC inmate Wesley Haynie, VDOC No. 1806460, has filed a lawsuit wherein he alleges that Keen Mountain security staff, Defendants D. Dye, J. Owens, C. Squier and former Officer E. Deel threatened Haynie after he (Haynie) made various complaints about being taken on a reckless transportation ride to court on October 14, 2021, causing Haynie to fear for his safety at Keen Mountain.  Haynie makes specific allegations that Defendants Dye, Owens, Squier and Deel threatened to place him "in the hole", "beat his black ass and stop feeding [him]", and that they used racial slurs towards him in September 2022.  Additionally, Haynie alleges that they threatened to place a knife in his locker and to have him transferred to Red Onion State Prison.

### *Facts Pertaining to the Virginia Department of Corrections' Grievance Procedure*

4.  Operating Procedure ("OP") 866.1, Offender Grievance Procedure, is a mechanism for inmates to resolve complaints, appeal administrative decisions and challenge the substance of procedures.  The process provides corrections administrators a means to evaluate potential problem areas and, if necessary, correct those problems in a timely manner.  A copy of OP 866.1, in effect during the relevant timeframe, is attached as Enclosure A.

5.  Pursuant to VDOC OP 866.1, all issues are grievable except those pertaining to policies, procedures and decisions of the Virginia Parole Board, disciplinary hearings, State and Federal court decisions, laws, and regulations, and matters beyond the control of the VDOC.  Every inmate is entitled to use the grievance procedure for problem resolution.  Reprisals are not imposed upon inmates for filing grievances in good faith.

2

6.      Officers making threats against inmates, harassing, using racial language, and retaliation are all grievable issues and must be pursued through the procedures set forth in OP 866.1 prior to filing a lawsuit.

7.      Pursuant to OP 866.1. in effect during the relevant timeframe,[2] Regular Grievances are to be submitted within 30 calendar days from the date of the incident. Prior to submitting a Regular Grievance, the inmate must demonstrate that he has made a good faith effort to informally resolve his complaint. This may be accomplished by submitting an Informal/Written Complaint[3] form to the appropriate department head. Prison staff should respond to the inmate's Informal/Written Complaint within 15 calendar days to ensure that the informal response is provided prior to the expiration of the 30-day period during which an inmate may file his Regular Grievance. The filing of an Informal/Written Complaint alone does not satisfy the exhaustion requirement.

8.      When submitting a formal Regular Grievance, the inmate must attach any required documentation to demonstrate his attempt to informally resolve the issue, such as attaching a copy of his Informal/Written Complaint. Only one issue per grievance form is addressed. Regular

---

[2] For complete clarity, the process for filing and exhausting grievances pursuant to VDOC OP 866.1 as detailed in this Affidavit was the process for doing so in September-December 2022, and under VDOC OP 866.1 with an effective date of January 1, 2021.

[3] In the versions of VDOC OP 866.1 with effective dates of July 1, 2013 and July 1, 2016, the first written step of the grievance process was to file what was called an "Informal Complaint." Under the policy in effect on January 1, 2021, the title of the "Informal Complaint" was changed to "Written Complaint." Accordingly, throughout this Affidavit, the term "Informal/Written Complaint" refers to the document that must be filed as the first written (and informal) step of VDOC's grievance process. The change to the title of the form did not reflect a substantive change to this step of the grievance process.

Grievances must be appealed through all available levels of review to satisfy the requirement of exhaustion before filing a lawsuit.

9.      Those Regular Grievances that do not meet the filing requirements of OP 866.1 are returned to the inmate within 2 working days from the date of receipt noting the reason for return on the intake section of the grievance form.   Reasons for which a Regular Grievance may be rejected at intake include, but are not limited to, more than one issue per grievance, expired filing period, repetitive, request for services, etc.  The inmate is instructed how to remedy any problems with the Regular Grievance when feasible.  A copy is made of all Regular Grievances returned to the inmate with the justification for return noted on the second page of the grievance form.  If an inmate wishes review of the intake decision on any Regular Grievance, he may send the Regular Grievance to the Regional Ombudsman for review.   There is no further review of the intake decision.  Appealing the intake decision does not satisfy the exhaustion requirement.

10.     If a Regular Grievance is accepted during the intake process, there are two levels of review available for Regular Grievances.   Level I reviews are conducted by the Warden or Superintendent of the prison.  If the inmate is dissatisfied with the determination, he may appeal the determination to Level II.   Level II responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services or Superintendent for Education.  The time limit for issuing a Level I response is 30 days and 20 days for a Level II response.  Expiration of the time limit without issuance of a response at any stage of the process automatically qualifies the grievance for appeal.

11.    An inmate may file an Emergency Grievance if he believes that there is a situation or condition which may subject him to immediate risk of serious personal injury or irreparable harm. The filing of an Emergency Grievance does not satisfy the exhaustion requirement.

### Facts about Haynie's Failure to Exhaust his Allegations

12.    VDOC records document that inmate Haynie was incarcerated at Keen Mountain from November 18, 2020, until February 7, 2023, when he was transferred to Greensville Correctional Center, a VDOC facility. I have reviewed his Grievance File maintained at Keen Mountain for any Informal/Written Complaints and/or Regular Grievances related to his allegations against Defendants Dye, Owens, Squier and Deel in the aforementioned paragraph number 3.

13.    Attached to this Affidavit as Enclosure B is a copy of Haynie's Grievance Report for the period of January 1, 2021, through December 31, 2022. A Grievance Report is a VDOC document that logs all Informal/Written Complaints, Regular Grievances that were accepted at intake, and appeals to Level I and Level II of Regular Grievances that have been filed by an inmate and which have been logged into CORIS, VDOC's inmate database, by the Grievance Office. A Grievance Report, however, does not reflect Regular Grievances that were rejected at intake. Therefore, any Informal/Written Complaints, accepted Regular Grievances, and appeals that Haynie filed between January 1, 2021, through December 31, 2022, are reflected on his Grievance Report. *See* Encl. B.

14.    To properly exhaust administrative remedies regarding Haynie's allegations that Defendants Dye, Owens, Squier and Deel threatened him, used racial language, threatened to plant a weapon in Haynie's cell, etc., at Keen Mountain, Haynie was required to submit an

5

Informal/Written Complaint to Keen Mountain about his allegations, and then follow up that Informal/Written Complaint with Regular Grievance(s), and appeal those Regular Grievance(s) through Level II. Based upon my thorough review of Haynie's Grievance File, Haynie did not do this for any of his allegations about Defendants Dye, Owens, Squier and Deel. There are no Informal/Written Complaints or Regular Grievances, either accepted or rejected at intake, pertaining to Defendants Dye, Owens, Squier or Deel, or Haynie's allegations against them, in Haynie's Keen Mountain Grievance File, or reflected on his Grievance Report.[4] *See* Encl. B.

### *Facts about how Informal/Written Complaints and Regular Grievances were filed by inmates at Keen Mountain in September through December 2022*

15.    Informal/Written Complaint forms and Regular Grievance forms were available to inmates during waking hours. Inmates could request these forms from the Floor Officer in the housing pod, from the Control Booth, or a Sergeant, Lieutenant, or Unit Manager. Emergency Grievance forms were, and are currently, kept in the Control Room of each housing unit and are available to an inmate 24 hours a day. Inmates had multiple points of access to all grievance forms in 2022, and continue to have this availability through the present day.

16.    In September through December 2022 (and through the present day),[5] there were two designated Grievance mailboxes located on the yard at Keen Mountain, which all General Population inmates have access to. These mailboxes are located outside of the pill call location and outside of the chow hall. The Grievance Coordinator or his or her designee checks these

---

[4] Haynie's Grievance Report reflects that Haynie has filed Informal/Written Complaint(s) about Officer Ashby and other VDOC employees.

[5] For complete clarity, the process described in paragraph numbers 16 and 17 of this Affidavit was the process for requesting and submitting Informal/Written Complaints and Regular Grievances at Keen Mountain in September-December 2022 and continues to be that same process to this present day.

mailboxes daily during regular business days. The mailboxes are locked and no one else has access to retrieve the mailboxes' contents except for those individuals working in the Grievance Office of if the Warden approves someone else to retrieve the mailbox contents. When an inmate wishes to submit an Informal/Written Complaint or Regular Grievance, he may put the form in one of the Grievance mailboxes, and it is be picked up by either the Grievance Coordinator or his or her designee.

17.    After the Informal/Written Complaint or Regular Grievance is picked-up, it is taken to the Grievance Office where it is date stamped and logged into CORIS, VDOC's inmate database, and a Grievance Receipt is issued to the inmate.[6]  Inmates are not permitted in the Grievance Office and are not present when Informal/Written Complaints are received there and processed. Informal/Written Complaints and Regular Grievances are not accepted by staff to be delivered to the Grievance Office or to the Grievance Coordinator.  An inmate must place his Informal/Written Complaint or Regular Grievance in a Grievance mailbox for it to be received by the Grievance Office.

18.    After the Informal/Written Complaint is logged into CORIS, the Informal/Written Complaint is then forwarded to the appropriate individual for a response. If an inmate raises allegations against a specific officer in an Informal/Written Complaint, that Informal/Written Complaint would be forwarded to the officer's supervisor for a response. For example, if an inmate had filed an Informal/Written Complaint about an Officer Smith, after the Informal/Written Complaint was logged into CORIS, it would be sent to Officer Smith's supervisor for a response.

---

[6] As stated, an inmate's Grievance Report is a VDOC document that reflects all of an inmate's Informal/Written Complaint(s) and accepted Regular Grievances that have been logged into CORIS by the Grievance Office.

However, as stated, the Informal/Written Complaint would *first* be logged into CORIS before being forwarded, and therefore would be reflected on the inmate's Grievance Report.

### Haynie Failed to Exhaust his Allegations

19.     Pursuant to my review of Haynie's Grievance File and Grievance Report, Haynie did not follow the procedures set forth in VDOC OP 866.1 to properly exhaust his administrative remedies with respect to his allegations against Defendants Dye, Owens, Squier and Deel. He did not even take the first step of the grievance process by filing an Informal/Written Complaint about his allegations.   If Haynie had filed an Informal/Written Complaint about any of his allegations against Dye, Owens, Squier and Deel, this would be reflected on his Grievance Report, but it is not. *See* Encl. B.

20.     I have never thrown away or destroyed any inmate's Informal/Written Complaint or Regular Grievance that was submitted to the Grievance Office via the Grievance mailboxes, and I have never thrown away or destroyed any Informal/Written Complaint or Regular Grievance submitted by Haynie. It was, and remains, my job duties to retrieve Informal/Written Complaints and Regular Grievances from the Grievance mailboxes at Keen Mountain, and to process them pursuant to VDOC's OP 866.1. I am unaware of any issues that Haynie may have had with any VDOC employees at Keen Mountain, and I would have no reason to throw away or destroy Haynie's grievances.  Doing so would have been a violation of my job responsibilities, and I could face discipline as a VDOC employee for having done so.

21.     If Haynie had filed an Informal/Written Complaint regarding his allegations against Defendants Dye, Owens, Squier and Deel and for whatever reason did not receive a Grievance Receipt, he simply had to send me a Facility Request form asking for a copy of the Grievance

8

Receipt.  I would have checked CORIS to determine if there was a Grievance Receipt for the Informal/Written Complaint, and I would have printed the Grievance Receipt for him and sent it back.  Haynie would have then needed to submit the Grievance Receipt in lieu of the Informal/Written Complaint with a Regular Grievance to the Grievance Office for the Regular Grievance to be accepted at intake.

22.    If an inmate sends me a Facility Request form asking for a copy of a Grievance Receipt, or for any other information, it is my practice to make a copy of that Facility Request form and keep it in the inmate's Grievance File.  I then send the Facility Request form, with my response, back to the inmate.  I have checked Haynie's Keen Mountain Grievance File for copies of any Facility Request form(s) requesting a Grievance Receipt, or any other information.  There are not any copies of any Facility Request form(s) from Haynie in his Grievance File at Keen Mountain.

H. HARDIN

_Holly Hardin_
Affiant

Sworn and subscribed to before me, a Notary Public, in and for the Commonwealth of Virginia, County of Buchanan, this __10__ day of March, 2025.

BARBARA A. SHORTT
NOTARY PUBLIC
Commonwealth of Virginia
Registration No. 7923297
My Commission Expires May 31, 2025

_____
Notary Public

My commission expires: _____ _Barbara A Shortt_
                              _May 31, 2025_

9

| | |
|---|---|
|  **Virginia Department of Corrections** | **Offender Management and Programs** |
| | **Operating Procedure 866.1** |
| | *Offender Grievance Procedure* |
| | **Authority:** Directive 866, *Offender Complaints and Legal Access* |
| | **Effective Date:** January 1, 2021 <br> **Revised Effective Date**: February 1, 2021 |
| | **Amended:** 6/1/22, 8/1/22, 4/1/23 |
| | **Supersedes:** Operating Procedure 866.1, July 1, 2016 |
| | **Access:** ☒ Public ☐ Restricted <br> ☒ Incarcerated Offender |
| | **ACA/PREA Standards:** 5-ACI-3D-19, 5-ACI-6A-01, 5-ACI-6C-01; 4-4284, 4-4344, 4-4394; 4-ACRS-4C-01, 4-ACRS-6B-03; 2-CI-5A-7; 2-CO-3C-01; §115.51, §115.52 |

| | | | |
|---|---|---|---|
| **Content Owner:** | Ryan McCord <br> Legal Issues Coordinator | *Signature Copy on File* | 10/5/20 |
| | | Signature | Date |
| **Reviewer:** | Dean W. Ricks <br> Director of Administrative Compliance | *Signature Copy on File* | 10/6/20 |
| | | Signature | Date |
| **Signatory:** | Joseph W. Walters <br> Deputy Director for Administration | *Signature Copy on File* | 10/8/20 |
| | | Signature | Date |
| **Signatory:** | A. David Robinson <br> Chief of Corrections Operations | *Signature Copy on File* | 10/20/20 |
| | | Signature | Date |

## REVIEW

The Content Owner will review this operating procedure annually and re-write it no later than three years after the effective date.

*The content owner reviewed this operating procedure in January 2022 and necessary changes are being drafted. The content owner reviewed this operating procedure in February 2023 and determined that no changes are needed.*

## COMPLIANCE

This operating procedure applies to all units operated by the Virginia Department of Corrections. Practices and procedures must comply with applicable State and Federal laws and regulations, ACA standards, PREA standards, and DOC directives and operating procedures.

ENCLOSURE A

Operating Procedure 866.1, *Offender Grievance Procedure, Institutions*                    Effective Date: January 1, 2021

## Table of Contents

DEFINITIONS ........................................................................................................................................ 3

PURPOSE ............................................................................................................................................. 4

PROCEDURE ........................................................................................................................................ 4

    I.     Grievance Procedure Overview ................................................................................................ 4

    II.    Informal Complaint Process ...................................................................................................... 5

    III.   Regular Grievance Process ........................................................................................................ 6

    IV.   The Grievance Appeal Process ................................................................................................ 11

    V.    Judicial Relief .......................................................................................................................... 13

    VI.   Offender Limitation Decision as a Result of Abuse ................................................................ 13

    VII.  Emergency Grievance Process ................................................................................................ 14

    VIII. Administration, Operation, and Enforcement of the Grievance Procedure ............................ 15

REFERENCES ..................................................................................................................................... 17

ATTACHMENTS ................................................................................................................................ 17

FORM CITATIONS ............................................................................................................................. 17

Operating Procedure 866.1, *Offender Grievance Procedure, Institutions*                    Effective Date: January 1, 2021

## DEFINITIONS

**Day** - Any 24-hour day regardless of weekends or holidays

**Emergency** - A situation or condition which may subject the offender to immediate risk of serious personal injury or irreparable harm

**Emergency Grievance** - An offender's formal complaint alleging a situation or condition which, if left unresolved, would subject the offender to substantial risk of imminent sexual abuse or immediate risk of serious personal injury or irreparable harm.

**Informal Complaint Process** - A process that consists of both a verbal and written complaint in which an offender attempts to resolve an issue informally with staff prior to submitting a grievance

**Institution** - A prison facility operated by the Department of Corrections; includes major institutions, field units, and work centers

**Institutional Ombudsman** - The employee designated to coordinate and monitor the *Offender Grievance Procedure* at the institution

**Offender Grievance Procedure** - This operating procedure and the institution's corresponding Implementation Memorandum

**Regional Ombudsman** - The employee designated to monitor the grievance procedure and provide investigative services for offender grievance appeals within their assigned Region

**Regular Grievance** - An offender's formal complaint concerning an unresolved issue, which has affected the offender personally and meets intake criteria

**Retaliation** - Any adverse or punitive action or threat of similar action, against anyone for use of or participation in the *Offender Grievance Procedure*

**Third Party** - Any individual, not the offender, who assists an offender in completing or filing a grievance pertaining to allegations of sexual abuse and/or sexual harassment or who files such a request on the offender's behalf

**Verbal Complaint** - The first step in the informal complaint process in which the offender discusses their issue with a staff member for a quick resolution

**Waking Hours** - The hours in the day after the first formal count has cleared and before the last formal count begins in which facility activities are generally conducted

**Written Complaint** - The second step in the informal complaint process in which the offender submits their issue in writing on a *Written Complaint* 866_F3

**Working Day** - Weekdays, Monday through Friday, except official state holidays

# PURPOSE

This operating procedure provides an administrative process for resolving offender issues and complaints through fair, prompt decisions, and actions in response to complaints and grievances from offenders incarcerated in Department of Corrections institutions.

# PROCEDURE

I.    Grievance Procedure Overview

A complete explanation on each step of the *Offender Grievance Procedure* to include the verbal and written complaint, regular grievance, and emergency grievance process as well as any exceptions to these processes are covered in this operating procedure. This operating procedure defines the boundaries and steps required to constitute an exhaustion of administrative remedy for *Judicial Review* purposes. (added 6/1/22)

A.    The *Offender Grievance Procedure* is one way in which offenders can privately report sexual abuse and sexual harassment, retaliation by other offenders or staff for reporting sexual abuse and sexual harassment, and/or any staff neglect or violation of responsibilities that may have contributed to such incidents. (§115.51[a])

B.    Staff are prohibited from interfering in any part of the complaint or grievance process and from retaliating against an individual for use and/or participation in the *Offender Grievance Procedure*.

C.    Each institution must provide a grievance mailbox for offenders to submit their grievance documents directly to the Institutional Ombudsman.  Facility staff must provide offenders with written information on the location of grievance mailboxes as well as the scheduled time of pickup; the offender is responsible for placing their documents in the mailbox within the established filing deadlines.

D.    A brief overview of the informal complaint and regular grievance process from start to finish is as follows:

1.    The first step in the informal complaint process is for the offender to discuss their issue with staff for a quick resolution; see *Verbal Complaint* section.

2.    If the issue is not resolved to the satisfaction of the offender, the offender may submit a *Written Complaint* 866_F3.  The *Written Complaint* must be received by designated staff within 15 days of the original incident or discovery of the incident; see *Completing and Submitting a Written Complaint* section.

3.    Following receipt of a *Written Complaint*, staff have 15 days to provide an appropriate response to the complaint; see *Resolving and Responding to a Written Complaint* section.

4.    If the issue on the *Written Complaint* is not resolved to the satisfaction of the ~~offender~~ inmate, or staff fail to provide a written response within 15 days, the ~~offender~~ inmate may file a *Regular Grievance* 866_F1.  The *Regular Grievance* must be placed in the Grievance Mailbox within 30 days of the original incident or discovery of the incident unless a more restrictive timeframe applies; see *Completing and Submitting a Regular Grievance* section. (changed 6/1/22)

Note: A *Written Complaint* is not required when an ~~offender~~ inmate alleges sexual abuse or sexual harassment nor is it required when other documentation satisfies the informal complaint process (such as for classification hearings, disapproved correspondence/ publications, and confiscated property). Written complaints are required for all other allegations prior to filing a *Regular Grievance,* in order to constitute an exhaustion of remedies prior to seeking *Judicial Relief*.  Failure to do so may result in a rejected regular grievance upon intake. (changed 6/1/22)

5.    Following receipt of a *Regular Grievance*, the Institutional Ombudsman has two working days to accept or reject the grievance; see *Accepting or Rejecting a Regular Grievance* section.

a.    *Accepted Grievance* - If the grievance is accepted, staff has two working days from its receipt to issue a *Grievance Receipt*.

b.    *Rejected Grievance* - If the grievance is rejected, staff has two working days from its receipt to

Operating Procedure 866.1, *Offender Grievance Procedure, Institutions*       Effective Date: January 1, 2021

    return the grievance to the offender for possible resubmission or appeal of the intake decision.

6. Following acceptance of a *Regular Grievance* 866_F1, staff has 30 days from its receipt to investigate and resolve the grievance; see *Reviewing a Grievance* section.

7. If the grievance is not resolved to the satisfaction of the offender, the offender has five days to file an appeal; see *Completing and Submitting an Appeal* section.

8. If the offender files an appeal, staff has 20 days to review and respond to the appeal; see *Reviewing and Responding to Grievance Appeals* section.

9. If the appeal is not resolved to the satisfaction of the offender and all steps in the *Offender Grievance Procedure* are exhausted, the offender may elect to seek judicial relief; see *Judicial Relief* section.

E. Emergency Grievance Process (§115.52[f(1)])

1. Any offender who has a substantial risk of imminent sexual abuse or whose current situation or condition subjects them to an immediate risk of serious personal injury or irreparable harm should immediately notify staff for assistance.

2. The offender can access the emergency grievance process by submitting their issue on the *Emergency Grievance* 866_F4, for an expedited response.

3. Emergency grievances that are not resolved to the inmate's satisfaction may then be filed as a *Regular Grievance*. An inmate must exhaust this administrative remedy when originally filing an emergency grievance, prior to seeking *Judicial Relief.* (added 6/1/22)

II. Informal Complaint Process

A. Verbal Complaint

1. A verbal complaint is an offender's first and best option to resolve issues quickly and informally with staff.

2. Receiving staff must accept all verbal complaints for consideration and must try to resolve the offender's issue themselves which may include contacting a staff member for assistance.

3. If receiving staff cannot or should not resolve the offender's issue, the staff member must notify the offender of the appropriate process for resolving their issue, e.g., sick call request, offender request form, etc. For example, if the verbal complaint is about medical care, receiving staff should refer the offender to the facility sick call process.

B. Written Complaint

1. Requesting a *Written Complaint* - After an ~~offender~~ inmate lodges a verbal complaint, and if the issue remains unresolved or the ~~offender~~ inmate is ~~not~~ unsatisfied with the resolution, the ~~offender~~ inmate may request a *Written Complaint* 866_F3. (changed 6/1/22)

   a. Where *Written Complaint* 866_F3 are readily available to offenders in the housing units and/or other designated locations, staff must inform the offender of the designated location.

   b. When staff issue *Written Complaints*, the offender must receive a *Written Complaint* as soon as practicable but no later than by the end of that staff member's workday.

   c. Completing and Submitting a *Written Complaint* - Following receipt, the offender should submit the *Written Complaint* 866_F3. *Written Complaints* must be addressed to institutional staff or an institutional department as complaints are not referred outside the institution.

   d. The *Written Complaint* must be received by the Institutional Ombudsman or designated staff within 15 days of the original incident or discovery of the incident.

   e. If the ~~offender~~ inmate has transferred since the incident's occurrence, the Institutional Ombudsman accepting the *Written Complaint* should send the *Written Complaint* to the institution where the issue originated for resolution. (changed 6/1/22)



VIRGINIA DEPARTMENT OF CORRECTIONS

2. Accepting a *Written Complaint* - The Institutional Ombudsman or other designated staff member must accept all *Written Complaints* 866_F3 for consideration unless the ~~offender~~ inmate is limited. Within two working days of receipt, staff must log the *Written Complaint,* even those considered repetitive, in VACORIS, print the *Grievance Receipt,* and provide the ~~offender~~ inmate with the receipt as notification of acceptance. (changed 6/1/22)

3. Reviewing a *Written Complaint* - Following acceptance of a *Written Complaint*, an appropriate staff member should speak with the offender and, when necessary, collaborate with other staff to better understand and respond to the offender's complaint.

4. Resolving and Responding to a *Written Complaint* - Within 15 days of logged receipt, responding staff should seek resolution of the *Written Complaint* and prepare a written response to include any corresponding outcome(s).

    a. *Written Complaints* regarding medical, dental, and mental health care must go to corresponding medical/ mental health staff, as appropriate, for response. ( 5-ACI-6C-01; 4-4394; 4-ACRS-4C-01)

    b. Staff must provide the completed *Written Complaint* to the offender as the department's response and must forward a copy of the *Written Complaint* to the Institutional Ombudsman or other designated staff member to log the response in VACORIS.

    c. Staff who are the subject of a complaint alleging staff misconduct, sexual abuse or sexual harassment of an ~~offender~~ inmate, or any possible violation of the *Standards of Conduct* must not be the respondent to the *Written Complaint* but may offer factual information during the investigation of the complaint. (§115.52[c(1)], (§115.52[c(2)]) (changed 6/1/22)

5. Withdrawing a *Written Complaint* - The offender may withdraw a *Written Complaint* at any time by completing the withdrawal section of the *Written Complaint* and submitting it to designated staff.

    a. The withdrawal process requires a staff witness, staff signature, and must be logged in VACORIS.

    b. Once a *Written Complaint* is withdrawn, the offender may resubmit the issue once on a new *Written Complaint* 866_F3 as long as the original 15-day time limit has not expired.

C. PREA Exception to Informal Complaint Process

1. An offender is not required to use the informal complaint process or otherwise attempt to resolve with staff any alleged incident of sexual abuse or sexual harassment. (§115.52[b(3)])

2. Staff must accept all offender allegations of sexual abuse and sexual harassment reported through the informal complaint process and must immediately report any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment to the Facility Unit Head and the PREA Compliance Manager. (§115.51[c]).

3. Staff must forward *Written Complaints* alleging sexual abuse or sexual assault to the PREA Compliance Manager for investigation; the written response must be "This matter has been forwarded for investigation to the PREA Compliance Manager".  The PREA Compliance Manager must notify the Regional PREA Analyst.

III.   Regular Grievance Process

A. Requesting a *Regular Grievance*

1. If the offender is dissatisfied with staff's response to their *Written Complaint*, or if 15 days have passed without staff response to their complaint, the offender may elect to file a *Regular Grievance.*

2. Offenders can request a *Regular Grievance* 866_F1 from staff during waking hours; see Attachment 1, *Filing a Regular Grievance,* for step-by-step instructions.

    a. Where *Regular Grievances* 866_F1 are readily available to offenders in the housing units and/or other designated locations, staff must inform the offender of the designated location.

    b. When staff issue *Regular Grievanc*es, the offender must receive a *Regular Grievance* as soon as practicable but no later than by the end of that staff member's workday.



Operating Procedure 866.1, *Offender Grievance Procedure, Institutions*    Effective Date: January 1, 2021

B. Completing and Submitting a *Regular Grievance*

1. A completed *Regular Grievance* 866_F1 should contain a single grievable issue.

    a. Grievable issues include:

        i. Substance or administration of operating procedures

        ii. Actions of staff, contractual staff, volunteers, and interns

        iii. Retaliation against the offender for using the *Offender Grievance Procedure*

        iv. DOC's administration of the Interstate Compact Agreement

        v. Conditions of care under the authority of the DOC

    b. Non-Grievable issues include:

        i. Disciplinary hearing decisions, penalties and/or procedural errors, which may be appealed in accordance with Operating Procedure 861.1, *Offender Discipline, Institutions*

        ii. Regular Grievance Intake Decisions - must be appealed through established process

        iii. Limitation Decisions - must be appealed to the Regional Administrator through established process

        iv. State and Federal laws, regulations, and court decisions

        v. Policies, procedures, and decisions of other agencies including the Parole Board, the Board of Corrections, and the Virginia Department of Transportation (VDOT)

        vi. Issues yet to occur

        vii. Other issues beyond the control of the DOC

    c. The grieved issue must:

        i. Affect the offender personally

        ii. Be identical to and limited to the issue submitted on the *Written Complaint*

2. A completed *Regular Grievance* 866_F1 must include the ~~offender's~~ inmate's name, number, housing information, the date when the incident occurred or was discovered, and a detailed explanation of the issue and how it affected them, including specific identification of only those staff whose actions prompted filing a *Regular Grievance*. (changed 6/1/22)

3. The grievance should avoid the reasons for rejection and return listed on the *Regular Grievance* 866_F1 and/or Attachment 1, *Filing a Regular Grievance*.

4. Third Party Assistance - Third parties must be able to assist offenders in completing grievances relating to allegations of sexual abuse and sexual harassment and must be permitted to file such requests on behalf of offenders.  (§115.51[c],§115.52[e])

    a. If a third party files such a request on behalf of an offender, the offender must agree to have the request filed on their behalf.

        i. If the offender does not agree, staff must document the decision and the grievance must not be accepted.

        ii. If the offender does agree, assistance from fellow offenders or staff members may continue through all stages that remain.

    b. Any third party filing of a request related to allegations of sexual abuse or sexual harassment must be forwarded to the PREA Compliance Manager.

    c. For all other grievances, third parties are permitted to assist only in the completion of the *Regular Grievance* 866_F1.

5. Timeline for Submission - An offender must deliver the original *Regular Grievance* 866_F1 with attached document(s) to the Grievance Mailbox within 30 days from the original incident or discovery of the incident unless a more restrictive timeframe applies.

    a. Photocopies and/or Carbon Copies are not accepted.

    b. Exceptions to the 30-day timeline for filing:

        i. The delay is beyond the offender's control, i.e. injury, sickness, etc.  The offender has five days



Operating Procedure 866.1, *Offender Grievance Procedure, Institutions*                    Effective Date: January 1, 2021

to file their grievance once the reason for delay is no longer valid.

    ii. The offender has not received formal orientation on accessing the *Offender Grievance Procedure* at that institution. Provisions should be made for staff to provide assistance so that the offender's ability to grieve an issue is in no way hindered.

    iii. A more restrictive time limit has been established in operating procedures to prevent loss of remedy or the issue becoming moot.

    iv. There is no time limit on when an ~~offender~~ inmate may submit a grievance regarding an allegation of sexual abuse or sexual harassment. (§115.52[b(1)]) (changed 6/1/22)

      (a) Otherwise-applicable time limits apply to any portion of a grievance that does not allege an incident of sexual abuse. (§115.52[b(2)])

      (b) The DOC retains their ability to the extent permitted by law to defend against an ~~offender~~ inmate lawsuit, on the grounds, that the applicable statute of limitations has expired. (§115.52[b(3)]) (changed 6/1/22)

6. Supporting Documentation - Supporting documents must be filed with the *Regular Grievance* for consideration. Such documents include but are not limited to the following:

    a. *Written Complaint*

    b. *Notification of Confiscation of Property*

    c. *Notice of Unauthorized Correspondence*

    d. *Notification of Publication Disapproval*

    e. *Institutional Classification Authority Hearing* report and any related documents

    f. *Request for Reasonable Accommodation* (added 6/1/22)

    g. *Emergency Grievance Response* (added 6/1/22)

7. If the ~~offender~~ inmate has transferred prior to final resolution of the grievance, the Institutional Ombudsman should send the *Regular Grievance* with the corresponding supporting documentation to the institution where the issue originated for resolution. (changed 6/1/22)

C. Accepting or Rejecting a *Regular Grievance*

1. Each day, designated staff must retrieve all documents from the grievance mailbox at or following their institution's scheduled pick up time.

2. Regardless of the intake decision (accepting or rejecting the grievance), all documents retrieved from the grievance mailbox must be date stamped with the date received.

3. *Regular Grievances* which include *Written Complaints* filed after the 15 days should be accepted for intake as long as the *Regular Grievance* is submitted within 30 days of the event or discovery. (added 6/1/22)

4. If the *Regular Grievance* meets the intake criteria, staff must accept the grievance and log it into VACORIS using the received date. Within two working days, designated staff must print and provide the *Grievance Receipt* to the offender as notification of acceptance.

5. If the *Regular Grievance* does not meet the intake criteria, staff has two working days from receipt to complete the *Intake* section on the *Regular Grievance* 866_F1, indicating the reason for rejection, and to return the *Regular Grievance* to the offender. Staff must maintain a copy of all returned grievances.

6. If the offender disagrees with the intake decision, the offender has five days to appeal the decision.

7. Special Concerns during the Intake Process

    a. Staff must accept all offender allegations of sexual abuse and sexual harassment reported on a grievance and must immediately report any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment to the Facility Unit Head and PREA Compliance Manager. The PREA Compliance Manager must notify the Regional PREA Analyst. (§115.51[c])

    b. Staff must bring any grievance alleging physical assault or criminal activity to the attention of the

Facility Unit Head immediately upon receipt.

   c. Staff must not return a *Regular Grievance* concerning an offender's medical care to the offender for *Insufficient Information*. Staff must forward these grievances to the Medical Department once logged.

   d. Staff must not return a *Regular Grievance* alleging sexual abuse or sexual harassment for insufficient information. Staff must forward these grievances to the PREA Compliance Manager once logged.

   e. Virginia offenders housed in states participating in the *Interstate Compact Agreement* must submit *Regular Grievances* concerning the *Agreement* to the Manager of Central Classification Services in the Office of Offender Management Services for response.

   f. When a grievance references a specific audio or video recording, staff must make a copy of the recording and maintain it until exhaustion of administrative remedies or pending litigation in accordance with Operating Procedure 030.1, *Evidence Collection and Preservation.*

D. Reviewing a Grievance

  1. Once the grievance is accepted, logged, and receipted, the Institutional Ombudsman determines the course of investigation.

  2. If there is more than one issue on the *Regular Grievance* 866_F1, the Institutional Ombudsman will only investigate and provide a grievance response to the exact same issue addressed through the informal complaint process.

   a. The Institutional Ombudsman will send all other issues on the *Regular Grievance* to the Unit Manager and/or other staff, who can address the offender's issue, for investigation and resolution.

   b. The Institutional Ombudsman designates a due date for the findings to be returned for review.

   c. When an issue on offender medical care is included in a *Regular Grievance* with other issues, the Institutional Ombudsman must forward a copy of the *Regular Grievance* to the Medical Department. ( 5-ACI-6C-01; 4-4394; 4-ACRS-4C-01)

   d. When an issue on sexual abuse or sexual assault is included in a *Regular Grievance* with other issues, the Institutional Ombudsman must forward a copy of the *Regular Grievance* to the PREA Compliance Manager.

  3. The Institutional Ombudsman, or designee, should have a face-to-face conversation with the submitting offender to ensure comprehension of the issue.

  4. All records necessary to address the issue must be available to staff conducting the investigation.

E. Determining a Disposition and Remedy

  1. After investigation, the Facility Unit Head or Assistant Facility Unit Head, must review the Institutional Ombudsman's findings to ensure an appropriate investigation occurred and then assign one of ~~two~~ three disposition categories: (changed 6/1/22)

   a. ~~Founded~~ Resolvable - The investigation determined ~~that~~ the ~~offender's~~ inmate's claim is credible and ~~there is an~~ a remedy ~~opportunity~~ to ~~assist~~ address the ~~offender~~ inmate's claim exists.

   b. Unfounded - The investigation determined ~~that~~ the ~~offender's~~ inmate's claim is not credible, meaning staff cannot offer any assistance to resolve the claim.

   c. Indeterminable – The investigation failed to determine the credibility of the inmate's claim or identify a potential remedy without additional fact-finding, accomplished through further investigation or other narrowly applicable operating procedures.

  2. Before issuing a response, the Facility Unit Head or Assistant Facility Unit Head must determine an appropriate remedy and ensure that any action taken is completed within a specified time frame.

F. Responding to and Resolving the Grievance



Operating Procedure 866.1, *Offender Grievance Procedure, Institutions*    Effective Date: January 1, 2021

1. The Institutional Ombudsman, or designee, must prepare an *Offender Grievance Response - Level I* draft in VACORIS for review by the Facility Unit Head or Assistant Facility Unit Head.

   a. The *Offender Grievance Response-Level I* must be clear, comprehensive, and include the following information:

      i. The results of the informal process

      ii. The facts (who, what, where, when, why)

      iii. The procedure and substance which govern the issue

      iv. A disposition of whether the grievance is ~~founded~~ resolvable, indeterminable, or unfounded (changed 6/1/22)

      v. If ~~founded~~ resolvable, the remedy to be provided and the time frame for provision (changed 6/1/22)

      vi. The reason for the determination

      vii. Instructions on the appeal process

   b. The *Offender Grievance Response-Level I* for all ~~founded~~ resolvable grievances must include the remedy. (changed 6/1/22)

      i. Individual Offender Remedy

         (a) Redress to the specific offender (protection of the offender; return or reimbursement of property; appropriate, prompt classification action; re-computation of time; timely medical attention or treatment; improvement of living conditions, etc.).

         (b) Staff must complete the redress in a timely manner. Timeliness depends on the gravity of the issue and the nature of the redress.

      ii. Administrative Remedy (as necessary)

         (a) The Facility Unit Head may revise local operating procedures, implementation memorandums, and/or institutional business practices to remedy a systemic issue that is determined to be harmful, unfair, or in violation of a governing policy, procedure, code, or regulation.

         (b) Any change to the substance, interpretation, or application of the institutional procedure and/or practice must be clearly communicated to staff, and documented.

         (c) The response must not include any information related to disciplinary actions against staff.

   c. When a grievance has been forwarded to the PREA Compliance Manager, the grievance response will be "This matter has been forwarded for investigation to the PREA Compliance Manager".

   d. The Institutional Ombudsman must print the *Offender Grievance Response - Level I* for review and signature by the Facility Unit Head or Assistant Facility Unit Head.

      i. The Facility Unit Head or Assistant Facility Unit Head must review the *Offender Grievance Response-Level I* to ensure the following:

         (a) A thorough and complete investigation was conducted

         (b) The grievance response is comprehensive and adequately addresses the offender's issue

         (c) The disposition is appropriate

         (d) The recommended remedy is appropriate and timely

      ii. The Facility Unit Head or Assistant Facility Unit Head must ensure that their concerns are resolved prior to signing the *Offender Grievance Response - Level I*.

   e. Staff must give the signed copy of the *Offender Grievance Response - Level I* and the original *Regular Grievance* 866_F1 to the offender with a copy filed in the offender's grievance record.

2. Regular Grievance Time Limits

   a. The total time allowed from initiation of a complaint to resolution through the regular grievance process is 180 days including authorized continuances; see Attachment 2, *Grievance Process - Timetable*.

   b. Within 30 days of issuance of the *Grievance Receipt,* each accepted grievance must be investigated, reviewed, completed, and the *Offender Grievance Response - Level I* returned to the ~~offender~~ inmate unless a continuance is authorized. (§115.52[d(1)], §115.52[d(2)]) (changed 6/1/22)

      i. If the *Offender Grievance Response- Level I* is not returned to the inmate within 30 days and an



authorized continuance was not issued, the inmate can appeal to the Regional Ombudsman in writing, including copies of the grievance receipt and other supporting documentation. (added 6/1/22)

    ii.  Prior to appealing to the Regional Ombudsman, the inmate may contact the Institutional Ombudsman to ascertain the status of the grievance response and await disposition. (added 6/1/22)

c. Authorized Continuances (§115.52[d(3)])

    i.  A grievance may be continued for up to a maximum of 30 days beyond the 30-day time limit for response.

    ii.  If a grievance is continued, the Institutional Ombudsman must document the continuance in VACORIS on the *Grievance Continuance Receipt*.

    iii.  The *Grievance Continuance Receipt* must include a justifiable reason for the continuance and a new date of completion. Justifiable reasons for a continuance include:

      (a) The principal(s) or key staff involved are unavailable to provide essential information due to escape, disturbance, or emergency.

      (b) Awaiting results of Special Investigation Unit or information from other facilities, divisions, or agencies

d. Prior to expiration of the time limit, the Institutional Ombudsman must print the VACORIS *Grievance Continuance Receipt* and deliver it to the offender as notification of the continuance.

G. Withdrawing a Grievance

1. An ~~offender~~ inmate may voluntarily withdraw their *Regular Grievance* at any time by notifying the Institutional Ombudsman that they wish to withdraw their grievance. (changed 6/1/22)

a. To be valid, the *Withdrawal of Grievance* section of the *Regular Grievance* 866_F1 must be completed and signed by the offender

b. The offender's withdrawal requires that a staff witness be present and that the witness sign the *Regular Grievance*.

c. The offender must submit the withdrawn grievance to the Institutional Ombudsman.

d. ~~Founded~~ Resolvable grievances may not be withdrawn. (changed 6/1/22)

2. Once the grievance is withdrawn, the offender may resubmit the grievance once on a new *Regular Grievance* 866_F1 as long the original 30-day time limit has not expired.

IV. The Grievance Appeal Process (5-ACI-3D-19; 4-4284; 4-ACRS-6B-03; 2-CI-5A-7)

A. Appealing the Grievance Response - The *Offender Grievance Response - Level I* includes a section for the offender to appeal their grievance response; see Attachment 3, *Filing an Appeal*.

1. Staff must not consider any issue in the appeal that was not included in the *Regular Grievance*.

2. Offenders cannot appeal withdrawn grievances.

3. Appeals not submitted in accordance with this operating procedure are returned to the offender with specific reasons for the return.

B. Completing and Submitting an Appeal

1. If the offender does not agree with the grievance response, disposition of the grievance, or the remedy, the offender may submit their appeal by providing the below information in the designated area on the *Offender Grievance Response - Level I*:

a. Explaining what piece (the response, the disposition, or the remedy) is being appealed

b. Identifying how the institution's determination does not address the issue

c. Suggesting a remedy

d. Signing and dating the appeal section on the *Offender Grievance Response - Level I*

2. The offender must submit their appeal within five days of receiving their response to the staff member



Operating Procedure 866.1, *Offender Grievance Procedure, Institutions*          Effective Date: January 1, 2021

designated on the *Offender Grievance Response - Level I*.

    a. Offenders are not required to pay the cost of postage and the use of bulk mail is encouraged.

    b. The appeal respondent must consider mail travel time before determining an appeal is late.

3. Expiration of a time limit (including authorized continuances) while the grievance is in staff possession qualifies the grievance for an appeal. (§115.52[d(4)])

    a. The Institutional Ombudsman must return the original grievance to the offender and notify the offender of the option to submit their appeal.

    b. The ~~offender~~ inmate has five days after ~~expiration of the time limit~~ receipt of the original grievance ~~from the institutional ombudsman~~ to file their appeal. (changed 6/1/22)

C. Reviewing and Responding to Grievance Appeals

1. The designated staff respondent depends on the subject matter of the grievance. The *Offender Grievance Response-Level I* includes the name and address of the appropriate staff respondent.

    a. Grievances regarding actions or decisions of Offender Management Services (including Central Classification Services decisions, time computation, Court and Legal actions, detainers, etc.) and issues concerning the Interstate Compact Agreement are reviewed and responded to by the Director of Offender Management Services

    b. Grievances regarding Health Services and Mental Health Services procedures and issues of medical, dental, and mental health care are reviewed and responded to by the Health Services Director. ( 5-ACI-6C-01; 4-4394; 4-ACRS-4C-01)

    c. Grievances regarding educational and vocational issues and procedures are reviewed and responded to by the Superintendent for Education or the Assistant Superintendent for Education Operations in the Superintendent's absence.

    d. Grievances challenging the substance or interpretation of any DOC Operating Procedure, decisions of the Publication Review Committee, and decisions of the Faith Review Committee are reviewed and responded to by the Chief of Corrections Operations or the Director. The Manager of the Ombudsman Services Unit investigates the grievance, as needed, and prepares a response for signature.

    e. Grievances on all other issues are forwarded to the appropriate Regional Office for review and response by the Regional Administrator. The Regional Ombudsman investigates the grievance, as needed, and prepares a response for the Regional Administrator's signature.

2. Regardless of the staff respondent or subject matter, staff must complete the appeal and provide a response to the ~~offender~~ inmate within 20 ~~working~~ days after receipt of the appeal. (§115.52[d(1)], §115.52[d(2)], (§115.52[d(3)])) (changed 6/1/22, corrected 8/1/22)

    a. An appeal may be continued for up to a maximum of 30 days beyond the 20-day time limit for an authorized continuance.

        i. The respondent must document the continuance in VACORIS and set a new date of completion.

        ii. Prior to expiration of the time limit, the respondent must print the VACORIS *Grievance Continuance Receipt* and deliver it to the offender as notification of the continuance.

    b. If the *Offender Grievance Response- Level II* is not returned to the inmate within 20 ~~working~~ days and an authorized continuance is not issued, the inmate may then seek judicial relief. (added 6/1/22, corrected 8/1/22)

    c. Prior to seeking judicial relief, the inmate may contact the Institutional Ombudsman to ascertain the status of the grievance response and await disposition. (added 6/1/22)

3. The respondent must choose one of the following actions based on the findings:

    a. Upheld - The grievance response, disposition, and/or remedy are correct and no further action by staff is required.

    b. Overturned - The grievance response, disposition, and/or remedy are in error, and further action by



Operating Procedure 866.1, *Offender Grievance Procedure, Institutions*                    Effective Date: January 1, 2021

staff is required to resolve the grievance.

    4.  If the respondent upholds the previous decision, the appeal response should indicate such.

    5.  If the grievance response, disposition, and/or remedy is overturned, the appeal response must indicate the results of any additional investigation, any action to be taken, and a specified time frame within which further action must occur.

    6.  The staff respondent must forward the signed copy of the *Offender Grievance Response - Level II* to the offender with a copy provided to the Institutional Ombudsman and a copy maintained on file by the respondent.

  D.  Reviewing and Responding to other appeals

    1.  ~~Offender~~ Inmate Appeal of an Intake Decision (changed 6/1/22)

      a.  If an offender wishes to appeal the intake decision on their grievance, the offender must submit the original *Regular Grievance* 866 _F1 to the Regional Ombudsman at the address posted on each housing unit's bulletin board within five days of receipt of the returned grievance.

      b.  The Regional Ombudsman must make a determination to either uphold or overturn the intake decision and must provide a disposition within five days of receipt.

      c.  The Regional Ombudsman must maintain a copy of all *Regular Grievances* received that appeal the intake decision with their determination to uphold or overturn documented.

      d.  There is no further review or appeal of an intake decision following a Regional Ombudsman disposition. (added 6/1/22)

    2.  Offender Appeal of a Limitation Decision

      a.  If an offender wishes to appeal a limitation decision, the offender can send the limitation notification to the Regional Administrator at any time within the period of limitation.

      b.  The Regional Administrator has 30 days to provide a response to the offender's appeal.

V.   Judicial Relief

  A.  An offender must exhaust all the requirements of the *Offender Grievance Procedure* before the offender can seek judicial relief.

  B.  The exhaustion requirement is met only when a *Regular Grievance* has been accepted into the grievance process and appealed, without satisfactory resolution of the issue.

  C.  Once the offender has met the exhaustion requirement, the appeal respondent must notify the offender that all requirements have been exhausted.

VI.   Offender Limitation Decision as a Result of Abuse

  A.  All offenders should use the *Offender Grievance Procedure* in good faith.  Any offender who abuses the *Offender Grievance Procedure* can have their usage limited by the Facility Unit Head.

    1.  The Facility Unit Head must review an offender's usage of the informal complaint, and grievance processes to determine if an offender is abusing the *Offender Grievance Procedure*.

    2.  If so determined, the Facility Unit Head may limit the offender's usage of the informal complaint and grievance process where necessary, with the following restrictions:

      a.  An offender may be restricted to no less than one *Written Complaint* 866_F3 and one *Regular Grievance* 866_F1 per week.

      b.  The Facility Unit Head should conduct a face-to-face interview prior to limiting the offender.

      c.  Limitations cannot exceed 90 days (per occurrence).

  B.  The Facility Unit Head must notify the ~~offender~~ inmate in writing of the reason for the limitation, the number of *Written Complaints* and *Regular Grievances* to which the ~~offender~~ inmate is limited, ~~and~~ the

period of limitation, and the appeal process including the Regional Administrator address for submission. (changed 6/1/22)

    1.  A copy of the notice must be sent to the Regional Administrator.

    2.  All *Written Complaints* and *Regular Grievances* affected by the limitation that were submitted by the offender prior to the limitation but have not been logged in VACORIS are returned to the offender with the written notification of the limitation from the Facility Unit Head.

    3.  All future *Written Complaints* and *Regular Grievances* submitted in excess of the limitation should be returned to the offender without a response.

C.  The ~~offender~~ inmate may appeal the limitation decision and application to the Regional Administrator by submitting a letter with a copy of the limitation decision attached. (changed 6/1/22)

    1.  The inmate may not appeal the limitation decision via the *Offender Grievance Procedure*. (added 6/1/22)

    2.  The limitation remains in effect while the offender appeals the decision.

    3.  The Regional Administrator has 30 days to provide a response.

VII.  Emergency Grievance Process

A.  Requesting an Emergency Grievance

    1.  The emergency grievance process is for offender reporting and expedited staff response to situations or conditions that may subject the offender to an immediate risk of serious personal injury or irreparable harm.

    2.  The institution's *Implementation Memorandum* and the offender orientation handbook must indicate how offenders can obtain and submit *Emergency Grievance* 866_F4.

    3.  *Emergency Grievances* must be available on a 24-hour basis to all offenders regardless of their housing status.

B.  Completing and Submitting an Emergency Grievance

To file an *Emergency Grievance*, the offender must write their issue on the pre-printed multipart *Emergency Grievance* 866_F4 and submit the completed *Emergency Grievance* to staff.

C.  Accepting Emergency Grievances

    1.  Staff must accept all *Emergency Grievances* 866_F4; the receiving staff member determines the appropriate course of action in accordance with the instructions for proper handling of *Emergency Grievances* provided in the institution's Implementation Memorandum.

    2.  When the *Emergency Grievance* must leave the presence of the offender, staff must complete the receipt at the bottom of the *Emergency Grievance* and hand it directly to the offender.

    3.  Staff must accept all offender allegations of sexual abuse and sexual harassment submitted on an *Emergency Grievance* and must immediately report any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment to the Facility Unit Head and PREA Compliance Manager. (§115.51[c])  The PREA Compliance Manager must notify the Regional PREA Analyst.

D.  Reviewing and Responding to an Emergency Grievance

    1.  Staff with appropriate training and the required authority to address offender emergencies and staff designated by Implementation Memorandum to respond to *Emergency Grievances* 866_F4 must review the issue, determine a course of action, and provide an appropriate response with reasons for the decision. (§115.52[f(2)])

        a.  All *Emergency Grievances* on medical and dental care must be forwarded to the Medical Department for review and response. ( 5-ACI-6C-01; 4-4394; 4-ACRS-4C-01)



b. All *Emergency Grievances* alleging sexual abuse, sexual harassment or a substantial, imminent risk of sexual abuse must be forwarded to the Administrative Duty Officer or Shift Commander.

2. If an emergency exists, the designated staff respondent must take necessary and timely action(s) to protect the offender and resolve the emergency

   a. The offender must receive a response to an *Emergency Grievance* within eight hours of receipt, or less, to protect the offender from serious personal injury or irreparable harm. (§115.52[f(2)])

   b. The staff respondent must include in their response the corrective or preventive action taken as a remedy and return the *Emergency Grievance* to the offender.

   c. If the staff respondent cannot resolve the emergency, the respondent must contact appropriate staff for assistance.

   d. Staff should prioritize offender emergencies based on institution's ability and resources.

3. If there is no emergency, the designated staff respondent should so indicate and return the *Emergency Grievance* to the offender.

4. The original *Emergency Grievance* with response must be sent to the offender with a copy routed to the Institutional Ombudsman for filing in the offender's grievance record.

5. Within two working days of issuing the response, all *Emergency Grievances* deemed an emergency must be logged into VACORIS. Grievances determined not to be an emergency are not logged.

VIII.    Administration, Operation, and Enforcement of the Grievance Procedure

A. Operating Procedure Compliance

1. Institutions must maintain an Implementation Memorandum written in accordance with Operating Procedure 010.4, *Operating Procedure Management,* to provide institution-specific information, designate staff responsibilities, and establish institutional processes under this operating procedure.

2. The institutions' Implementation Memorandum must comply with the requirements of this operating procedure.

   a. Each institution's Implementation Memorandum must include a list of best practices that ensures offenders' have meaningful access to the verbal complaint process i.e. staff rounds.

   b. The Implementation Memorandum must specify the following:
      i. How and to whom to submit a verbal complaint
      ii. Where offenders can obtain *Written Complaints* 866_F3*, Regular Grievances* 866_F1*,* and *Emergency Grievances* 866_F4
      iii. How and where, i.e., the designated location, to submit *Written Complaints* and *Regular Grievances*
      iv. Staff position(s) designated to log *Written Complaints*
      v. Staff positions responsible for responding to *Written Complaints* and *Regular Grievances*
      vi. The time frame allowed for staff responses at each level of the informal complaint, grievance, and emergency grievance process.

   c. The institution's Implementation Memorandum must ensure that: (§115.52[c(1)], (§115.52[c(2)])
      i. Any offender who alleges sexual abuse or sexual harassment is able to submit their complaint without submitting it to the staff member who is the subject of the complaint.
      ii. Such complaint must not be referred to the staff member who is the subject of the complaint.

   d. The institution's Implementation Memorandum must provide instructions for the proper handling of *Emergency Grievances*, including designation of staff persons responsible for receiving and responding to *Emergency Grievances*.

B. Communication of Procedures (5-ACI-6A-01; 4-4344; 2-CO-3C-01)

1. At the time of admission/ intake into the DOC, all offenders are informed about the procedures for



submitting grievances and are provided a copy of Attachment 4, *Offender Grievance Procedure Notification*.

2. During formal orientation at each institution, all staff and offenders receive information on the *Offender Grievance Procedure*, which is available within the institution for staff and offender review. (5-ACI-3D-19; 4-4284; 4-ACRS-6B-03; 2-CI-5A-7)

3. Offenders with special needs (e.g., visually or hearing impaired, non-English speaking, non-literate) should be identified and the Institutional Ombudsman notified so that necessary services can be obtained prior to the institution's formal orientation.

C. Accessibility and Retaliation

1. Each offender is entitled to good faith use of the *Offender Grievance Procedure*.

2. ~~Offenders~~ Inmates and staff must be free from retaliation for filing verbal complaints, *Written Complaints*, *Grievances*, appeals, or utilizing any other aspect of the *Offender Grievance Procedure* in good faith. (changed 6/1/22)

   a. An ~~offender~~ inmate may pursue a complaint of retaliation through the *Offender Grievance Procedure*, including claims that staff are filing disciplinary offense reports in retaliation. (changed 6/1/22)

   b. Allegations by staff of retaliation should be reported through their chain-of-command.

3. Any or all portions of the *Offender Grievance Procedure* may be temporarily suspended by the Facility Unit Head during emergency situations with the approval of both the Regional Operations Chief and the Chief of Corrections Operations. The processing of complaints and grievances must resume in a timely manner once order has been restored.

D. Records

1. The Institutional Ombudsman must maintain records of all complaints, regular and emergency grievances, appeal responses, and all associated investigative documentation submitted at the institution, both logged and un-logged.

   a. VACORIS should contain the official information of all logged grievances at each level of review.

   b. The Institutional Ombudsman should scan and upload all grievance documents when:

      i. The offender is known to be litigious.

      ii. The offender has previously gone to court on a grievance issue and it seems likely the offender intends to go to court over this issue.

      iii. The offender has indicated they intend to seek judicial relief for the issue.

      iv. The grievance pertains to an issue that is serious and likely litigious, e.g., violation of an offender's right to practice their religion. The Institutional Ombudsman should use discretion in determining whether the issue is sufficiently serious to warrant uploading to VACORIS.

      v. Per Facility Unit Head instructions.

   c. Grievances concerning matters known to be currently litigated or under investigation must be maintained until completion of the litigation or investigation.

   d. Grievance records are maintained and disposed of in accordance with Operating Procedure 025.3, *Public Records Retention and Disposition*.

2. Information on specific offender grievances are available to staff on a need-to-know basis, as determined by the Facility Unit Head.

E. Monitoring and Evaluation

1. Each institution must have an Institutional Ombudsman and a designated alternate to ensure compliance with the *Offender Grievance Procedure* in their absence.

2. The Institutional Ombudsman's responsibilities must include coordinating the day-to-day operation of the grievance process, maintaining accurate and current offender grievance files, logging content into

Operating Procedure 866.1, *Offender Grievance Procedure, Institutions*    Effective Date: January 1, 2021

VACORIS, investigating grievances, and preparing responses to grievances.

3. An Institutional Hearings Officer may not serve as an alternate unless specially approved by the Chief of Corrections Operations.

4. The Institutional Ombudsman must monitor compliance with the *Offender Grievance Procedure* at the institutional level and refers department(s) and/or staff not in compliance to the Facility Unit Head.

5. The Ombudsman Services Unit must monitor the *Offender Grievance Procedure* at Headquarters and the regional office level through institutional visits, *Monthly Grievance Report* 866_F2 reviews, and VACORIS monitoring. Department(s) and/or staff not in compliance must be referred to the Facility Unit Head. (4-ACRS-6B-03)

F. Disciplinary Action

1. An offender's use of the grievance procedure to resolve their issues is not normally cause for disciplinary action, unless, the written grievance document or related offender actions are subject to disciplinary action as outlined in Operating Procedure 861.1, *Offender Discipline, Institutions.*

2. Disciplinary action may include but is not limited to Disciplinary Offense Code 212, 222, 141, or filing a grievance of alleged sexual abuse proven to be in bad faith. (§115.52[g])

3. The Institutional Ombudsman will submit a *Disciplinary Offense Report* in VACORIS for processing in accordance with the offender disciplinary process.

# REFERENCES

Operating Procedure 010.4, *Operating Procedure Management*

Operating Procedure 025.3, *Public Records Retention and Disposition*

Operating Procedure 030.1, *Evidence Collection and Preservation*

~~Operating Procedure 720.4, *Co-payment for Health Care Services*~~ (Deleted 4/1/23)

Operating Procedure 861.1, *Offender Discipline, Institutions*

# ATTACHMENTS

Attachment 1, *Filing a Regular Grievance*

Attachment 2, *Grievance Process - Timetable*

Attachment 3, *Filing an Appeal*

Attachment 4, *Offender Grievance Procedure Notification*

# FORM CITATIONS

*Regular Grievance* 866_F1

*Monthly Grievance Report* 866_F2

*Written Complaint* 866_F3

*Emergency Grievance* 866_F4



*Virginia Department of Corrections*

# Inmate Grievance

Date:  1/1/2021 To 12/31/2022

## 1806460 Haynie, Wesley Martel Jr.

Grievance #: * All *

Type: * All *          Level: * All *          Finding: * All *

| Type | Number | Policy | Level | Received | Finding | Sent | Status |
|------|--------|--------|-------|----------|---------|------|--------|
| Written | KMCC-22-INF-02049 | 830.1:  Institutional Classification Management | Level I | 10/28/2022 | | 11/07/2022 | Closed |
| | **Summary/Addendum:** | Inmate states I was convicted of a felony on 10/14/22 due to that I had to stay GCA Level 4 for one year my year has been up since 10/14/22 due to not having a intern I'm not able to earn good time with like an intern so that I can earn good time my annual is more than thirty days away from the time in suppose to be switched with is 10/14/22 thank you [End Summary] [Begin Addendum]  CHAP Pozeg | | | | | |
| | **Response:** | Your next annual review date is 12/27/22. You will be eligible for class level review at your annual review. OP830.3, " The inmate will not become eligible or an advancement in their Class Level for 12 months from the conviction date." An administrative review s not required. 

Chap Pozeg 11/7/222 | | | | | |
| Type | Number | Policy | Level | Received | Finding | Sent | Status |
| Written | KMCC-22-INF-00486 | 720.1:  Access to Health Services | Level I | 02/23/2022 | | 03/11/2022 | Closed |
| | **Summary/Addendum:** | Complaint regarding being seen at MCV for second surgery on hand [End Summary] [Begin Addendum]  Medical | | | | | |
| | **Response:** | We have contacted MCV/VCU regarding follow up. Awaiting further info.

A. Bucklen- RNCA | | | | | |
| Type | Number | Policy | Level | Received | Finding | Sent | Status |
| Written | KMCC-22-INF-00206 | 730.2:  MHWS: Screening, Assessment, and Classification | Level I | 01/24/2022 | | 01/25/2022 | Closed |
| | **Summary/Addendum:** | Inmate states, I have complained to Mrs. Sadler about my MH issues that I have been experiencing since 10/14/21. She gave me a 4 week package to fill out once I filled it out and turned it in to her she never spoke with me. Once I approached her about it a week after I turned it in to her , which I placed it in her hand. She told me that she had not looked at it yet. She has basically ignored my cry for help with my mental health. It is her declaration of duty to assist me with my mental health issue. I would like to be moved to a compound were people actually do their jobs and assist people with medical/mental issues. [End Summary] [Begin Addendum]  Mental Health | | | | | |
| | **Response:** | Mr. Haynie, you turned your mood log in after Dec. 25, 2021. Due to restriction because of COVID protocol you were not scheduled for an office visit. You will be followed up with once restrictions are lifted.

T. Sadler- M.Ed- Psych. Assoc. | | | | | |
| Type | Number | Policy | Level | Received | Finding | Sent | Status |
| Written | KMCC-21-INF-02629 | 130.1R:  Rules of Conduct Governing Employees Relationships w/Offenders | Level I | 12/09/2021 | | 12/16/2021 | Closed |

This document contains confidential information.  Unauthorized dissemination may result in civil or criminal penalties.

ENCLOSURE B

*Virginia Department of Corrections*

COV\yet34832
1/27/2025 11:03:25 AM
corissnap

# Inmate Grievance

Date:  1/1/2021 To 12/31/2022

## 1806460 Haynie, Wesley Martel Jr.

Grievance #: * All *

Type: * All *                Level: * All *                Finding: * All *

| | | |
|---|---|---|
| **Summary/Addendum:** | | Inmate states, On the date above Ashby came in my pod cell searching and walked pass my cell then once he saw me he doubled back and came in my cell searched it and then called me a cry baby bitch due to the issue of me being transported to Greensville Circuit Court by him and not being seat belted in. I feel like I'm being targeted by him because I filed a grievance on that issue. I don't feel safe on this compound due to retaliation. [End Summary] [Begin Addendum]  Unit Manager Collins |
| **Response:** | | Officer Ashby does not recall this incident you are describing. He has denied any unprofessional action while working the housing units.

A. Collins- Unit Manager |

| Type | Number | Policy | Level | Received | Finding | Sent | Status |
|------|--------|--------|-------|----------|---------|------|--------|
| Written | KMCC-21-INF-02442 | 866.1:  Offender Grievance Procedure | Level I | 11/19/2021 | | 11/19/2021 | Closed |

| | | |
|---|---|---|
| **Summary/Addendum:** | | Inmate states, Ms. Breeding is violating my 1st amendment right to the US constitution by denying me the ability and right to address my issue tot he government (VADOC officials) thru the adult grievance procedure VA OP 866.1. By refusing to address my regular grievance with the written complaint attached KMCC-21-INF-02179. Therefore this complaint has been written and submitted. [End Summary] [Begin Addendum] Grievance |
| **Response:** | | The grievance was processed. The response is due 11/28/2021.

K. Breeding- GC |

| Type | Number | Policy | Level | Received | Finding | Sent | Status |
|------|--------|--------|-------|----------|---------|------|--------|
| Written | KMCC-21-INF-02359 | 801.6:  Offender Services | Level I | 11/08/2021 | | 12/02/2021 | Closed |

| | | |
|---|---|---|
| **Summary/Addendum:** | | Inmate states, I wrote Lt. Fleming on the date above and ask him to save the video footage from 4am to 5am in the main Sallyport and date 10/14/21 and I also ask to save the footage from 8pm to 9pm the same day and I haven't gotten a response back yet. [End Summary] [Begin Addendum]  Lt. Fleming |
| **Response:** | | The footage has been saved.

Lt. Fleming |

| Type | Number | Policy | Level | Received | Finding | Sent | Status |
|------|--------|--------|-------|----------|---------|------|--------|
| Regular | KMCC-21-REG-00166 | 720.1:  Access to Health Services | Level II | 10/29/2021 | Unfounded | 02/01/2022 | Closed |

| | | |
|---|---|---|
| **Summary/Addendum:** | | Grievance alleging denial of medical care [End Summary] [Begin Addendum]  Medical |

This document contains confidential information.  Unauthorized dissemination may result in civil or criminal penalties.

*Virginia Department of Corrections*

COV\yet34832
1/27/2025 11:03:25 AM
corissnap

# Inmate Grievance

Date:  1/1/2021 To 12/31/2022

## 1806460 Haynie, Wesley Martel Jr.

Grievance #: * All *

Type: * All *          Level: * All *          Finding: * All *

| | |
|---|---|
| **Response:** | LEVEL II HEALTH SERVICES DIRECTOR:<br>Your grievance appeal complaint has been reviewed along with the response from Level I grievance and your complaint that on 10/14/21 you hit your head and was unresponsive after being transported to court without a seatbelt with speeds up to 85 MPH. <br>Based on the information provided and upon further investigation, I concur with the Level I response and have determined your grievance UNFOUNDED.  Please note that the institutional provider is responsible for your medical care and will ultimately determine the course of your medical treatment, or need for essential medical care when there is modified movement due to the pandemic.  According to the level I response, you received ongoing medical treatment for complaints of headache and low back pain from the KMCC medical staff upon your return to the facility on 10/14/21, 10/15/21, and 10/18/21.  This issue is governed by OP 720.1.<br>If you have any further issues, please resubmit a sick call request for further evaluation of your medical needs and treatment plan.  You are encouraged to follow the recommendations of the health care staff as well.  There is no violation of policy/procedure regarding this issue.  No further action is needed from this level.  In accordance with OP 866.1 governing the Offender Grievance Procedure, Level II is the last level of appeal for this complaint.  All administrative remedies have been exhausted regarding this issue. |

| Type | Number | Policy | Level | Received | Finding | Sent | Status |
|---|---|---|---|---|---|---|---|
| Written | KMCC-21-INF-02249 | 720.3:  Health Maintenance Program | Level I | 10/25/2021 | | 10/28/2021 | Closed |

| | |
|---|---|
| **Summary/Addendum:** | Inmate states, I was told by the pill call nurse on the above date that I would be scheduled for an X-Ray on Tuesday 10/19/21 for my back and that I would receive my prescription in a day or two and its been a week and I have not received my X-Ray or my meds. I've been neglected my medical attention for my injury. [End Summary] [Begin Addendum]  Medical |
| **Response:** | No order for X-Ray. Received medication order. Utilize sick call for worsening or persistence.<br><br>A. Bucklen- RNCA |

| Type | Number | Policy | Level | Received | Finding | Sent | Status |
|---|---|---|---|---|---|---|---|
| Written | KMCC-21-INF-02179 | 130.1R:  Rules of Conduct Governing Employees Relationships w/Offenders | Level I | 10/19/2021 | | 10/21/2021 | Closed |

| | |
|---|---|
| **Summary/Addendum:** | Inmate states, On 10/14/21 I was transported to Greensville, VA to court by the 2 officers named above which is a 6 hour ride. I was transported in the paddy wagon handcuffed and shackled and without a seatbelt. I was tossed and threw around the entire trip doing speeds up to 85 mph. I hit my head and was unresponsive once I reached Greensville court. My back was injured and I couldn't walk for a little over 30 minutes. Got back to KMCC and was refused medical attention. [End Summary] [Begin Addendum]  Major Owens |
| **Response:** | Inmate Haynie,<br>You were transported to Greensville CC for court by staff. You were placed in a seatbelt when departing the facility. It is documented by staff. I do not know how you know the speed of the van due to the fact that you were in the van cell in the back. You were checked by medical staff upon your return. It is documented as well.<br><br>Major Owens |

This document contains confidential information.  Unauthorized dissemination may result in civil or criminal penalties.

*Virginia Department of Corrections*

COV\yet34832
1/27/2025 11:03:25 AM
corissnap

# Inmate Grievance

Date: 1/1/2021 To 12/31/2022

## 1806460 Haynie, Wesley Martel Jr.

Grievance #: * All *

Type: * All *                    Level: * All *                    Finding: * All *

| Type | Number | Policy | Level | Received | Finding | Sent | Status |
|------|--------|--------|-------|----------|---------|------|--------|
| Written | KMCC-21-INF-00664 | 802.1: Offender Property | Level I | 04/16/2021 | | 05/04/2021 | Closed |
| | **Summary/Addendum:** Inmate states, My JP5 player was confiscated on 4/13/21 and I was told by Unit Manager Collins that I had to write personal property so that I can get my property back. So can you please give me my JP5 play back. Thanks [End Summary] [Begin Addendum] Personal Property | | | | | | |
| | **Response:** Property doesn't have a player for you. <br><br> J. Hurt- Property Officer | | | | | | |

| Type | Number | Policy | Level | Received | Finding | Sent | Status |
|------|--------|--------|-------|----------|---------|------|--------|
| Written | KMCC-21-INF-00171 | 802.1: Offender Property | Level I | 01/26/2021 | | 03/17/2021 | Closed |
| | **Summary/Addendum:** Inmate states Some time between the dates listed above one hundred and forty some odd dollars was taken off of my books for some personal property that I ordered for the month of December 2020. I have yet to receive my property nor have I gotten my money put back on my account. I've sent you guy's request form but never got a response. [End Summary] [Begin Addendum] Personal Property | | | | | | |
| | **Response:** No response provided within 15 days, closing | | | | | | |

**Total: 11**

S32095

This document contains confidential information.  Unauthorized dissemination may result in civil or criminal penalties.