CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED
July 14, 2025
LAURA A. AUSTIN, CLERK
BY: s/ FELICIA CLARK
     DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **WESLEY HAYNIE,** ) | |
| ) | |
| Plaintiff, ) | Case No. 1:23CV00016 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **HAROLD CLARKE, ET AL.,** ) | JUDGE JAMES P. JONES |
| ) | |
| Defendants. ) | |

*Blake A. Weiner,* BLAKE WEINER LAW, PLLC, Richmond, Virginia, for Plaintiff; Ann-Marie White, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Defendants.

Plaintiff Wesley Haynie, a Virginia inmate proceeding with counsel, brought this action against several prison employees under 42 U.S.C. § 1983, alleging violations of his constitutional rights, as well a claim of common-law assault. Haynie's remaining claims consist of First Amendment claims against defendants Dye, Squier, Deel, Owens, and Ashby, Eighth Amendment claims against defendants Ashby and Robinette, and a common-law assault claim against defendant Ashby. Haynie's request for injunctive relief also remains.

The parties dispute whether Haynie exhausted the Virginia Department of Corrections' administrative remedies before bringing this suit, as is required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. I scheduled an

evidentiary hearing on the issue of exhaustion but prior to the hearing, I continued the matter pending the outcome of a case before the United States Supreme Court on the appropriate fact-finder as to an issue of exhaustion under the PLRA. The Supreme Court has now issued its opinion, *Perttu v. Richards*, 145 S. Ct. 1793 (June 18, 2025). Therefore, I will address *Perttu*'s implications for exhaustion in conjunction with my rulings on the defendants' Motion for Summary Judgment.

I.  FACTS.

The following material facts, taken from the summary judgment record, are stated in a light most favorable to Haynie.

Haynie was incarcerated at Keen Mountain Correctional Center in Oakwood, Virginia. He alleges that he sustained injuries when defendants Ashby and Robinette transported him in the back of a prison van to a court hearing. Haynie claims that he informed Ashby and Robinette that he was claustrophobic and did not want to enter the van, but they refused his request. Further, once Haynie was in the van, he was not provided with a seatbelt, and Ashby and Robinette intentionally drove recklessly, despite Haynie's repeated requests to the defendants to stop, causing him to be thrown from his seat. He lost consciousness as a result, and when he regained consciousness, he realized he had urinated on himself. Haynie alleges that he requested medical attention, but Ashby and Robinette falsely told his attorney that he had refused a seatbelt. The next day, Ashby told him to sign a statement saying

that he had been offered a seatbelt and refused it, but Haynie declined. As a result of refusing to sign the statement, Haynie contends that he was subjected to harassment by the defendants, including a threat that they would place a knife in his cell so that he would be transferred to a higher security facility. He was also threatened with violence and solitary confinement. Haynie alleges that the transport caused him to suffer ongoing back pain.

In defense, defendants Ashby, Squier, Owens, Deel, and Dye assert that Haynie has failed to exhaust his administrative remedies as to his claims as is required under the PLRA. In support, they have submitted a written record that purports to show all grievances Haynie filed over the period in question. The log does not contain the many initial grievances Haynie claims he filed about his claims in this case or appeals of initial grievances as is required under Keen Mountain's administrative rules. Haynie claims that this absence is due to the defendants' interference. He alleges that he failed to move forward with certain grievances due to threats against him and records of other grievances are absent from the log because the defendants removed them.

## II. Standard of Review.

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if its existence or non-existence could

result in a different jury verdict. *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F. 3d 459, 465 (4th Cir. 2001). When ruling on a summary judgment motion, the court should consider the parties' pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *Celotex Corp. v. Catrett ex rel. Catrett*, 477 U.S. 317, 322 (1986). "[T]he nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 783 (4th Cir. 2021) (unpublished) (quoting *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F. 3d 532, 540 (4th Cir. 2015)).

"[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F. 3d 562, 568 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2728 (3d ed. 1998)). The court may not assess credibility on a motion for summary judgment. *Id.* at 569.

Summary judgment is not a disfavored procedural shortcut, but an important mechanism for weeding out claims and defenses that have no factual basis. *Celotex Corp.*, 477 U.S. at 327. It is the affirmative obligation of the trial judge to prevent

factually unsupported claims and defenses from proceeding to trial. *Drewitt v. Pratt*, 999 F. 2d 774, 778–79 (4th Cir. 1993).

III. DISCUSSION.

A. Qualified Immunity.

Defendants Ashby, Squier, Owens, Deel, and Dye alleged that they are entitled to qualified immunity with regard to Haynie's First Amendment claim involving alleged interference with Haynie's attempted filing of grievances. Because qualified immunity is a complete bar to suit, I will consider this issue first.

The doctrine of qualified immunity protects government officials from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity, as a threshold issue, can operate to protect government officials from the burdens of discovery and trial. *Siegert v. Gilley*, 500 U.S. 226, 231–32 (1991). An officer is entitled to qualified immunity if the court finds that either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established such that it would not have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Henry v. Purnell*, 501 F. 3d 374, 377 (4th Cir. 2007) (internal quotation marks and citation omitted); *see Pearson v. Callahan*, 555 U.S.

223, 236 (2009) (holding that court may determine which facet of qualified immunity analysis to consider first).

The defendants argue that they are entitled to qualified immunity because the First Amendment right Haynie alleges they violated was not clearly established. They claim that there is no established case law that would put them "on reasonable notice that threatening the Plaintiff not to file prison grievances is *per se* unconstitutional under the First Amendment." Defs.' Mem. Supp. Mot. Summ. J. 3, ECF No. 52.

The defendants are correct that conduct taken before a plaintiff engages in a protected activity does not amount to retaliation. In *Booker v. South Carolina Department of Corrections*, the Fourth Circuit affirmed its prior ruling that a prison inmate has no "constitutional entitlement or due process interest in access to a grievance procedure." 855 F. 3d 533, 541 (4th Cir. 2017) (citing *Adams v. Rice*, 40 F. 3d 72 (4th Cir. 1994)). Thus, actions taken to prevent an inmate from utilizing a prison's grievance procedure do not violate any constitutionally protected right. Once an inmate files an informal complaint or grievance, however, he has exercised his First Amendment right to seek redress from the government, and any adverse action taken against him because of the exercise of this right is a constitutional violation. *Booker*, 855 F. 3d at 540.

In contrast to the defendants' assertions, Haynie is not simply alleging that he was prevented from filing grievances. Rather, he claims that the defendants threatened and harassed him *because* he filed grievances. He states that the defendants told him he would face consequences if he did not stop making such complaints. Thus, the First Amendment right at issue is alleged retaliation after a prisoner has resorted to the use of a grievance procedure. This is well established in the caselaw and would have been clear to a reasonable officer. Therefore, Ashby, Squier, Owens, Deel, and Dye are not entitled to qualified immunity as to Haynie's First Amendment retaliation claim.

## B. Exhaustion.

The defendants also argue that they are entitled to summary judgment because Haynie did not exhaust his prison administrative remedies as required by the PLRA. The PLRA requires that before an inmate may bring a claim, he must first fully exhaust all available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 83–84 (2006). Failure to exhaust is an affirmative defense and the burden falls on the defendant to prove the inmate's failure to exhaust. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The exhaustion requirement is mandatory and unequivocal. *Booth v. Churner*, 532 U.S. 731, 739–41 (2001). An inmate must exhaust available administrative remedies before filing suit and is not entitled to a stay of the

proceedings to cure exhaustion deficiencies. *Johnson v. Taylor*, No. 7:08CV00022, 2009 WL 691207, at *5 n. 16 (W.D. Va. Mar. 16, 2009).

The court may excuse a prisoner's failure to exhaust an administrative remedy if a prisoner "through no fault of his own, was prevented from availing himself of" the remedy. *Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008). This includes instances when prison officials interfere with a prisoner's ability to properly use or follow the administrative process. *Bacon v. Greene*, 319 F. App'x 256, 257–58 (4th Cir. 2009) (unpublished).

As discussed, I previously stayed an evidentiary hearing by the court on the issue of exhaustion in anticipation of the Supreme Court's decision in *Perttu*. 145 S. Ct. 1793. In *Perttu*, Richards, an inmate, brought suit against Perttu, a prison staff member. Richards claimed that Perttu sexually abused him and later thwarted his attempts to file grievances about those events. Richards brought a First Amendment claim against Perttu for the alleged interference with the grievance process. In response, Perttu denied that he had interfered with Richards' efforts to file grievances or made threats against him. The parties acknowledged that the facts surrounding exhaustion were in dispute, and that the resolution of the exhaustion issue would implicate the ultimate determination of Richards' First Amendment claim. However, they disagreed about who was the proper adjudicator of the exhaustion dispute.

The Supreme Court heard the case to answer the question of whether exhaustion disputes, when intertwined with the merits of the claims in a case, are an issue for the judge or for the jury. The Court held that when the facts of exhaustion under the PLRA are entangled with the merits of a claim that necessitates a jury trial under the Seventh Amendment, a party has a right to a jury trial on exhaustion. *Id.* at 1806–08. The Court therefore determined that Richards was entitled to a jury determination as to whether or not he had exhausted the prison remedies available to him.

Here, the parties have a similar dispute regarding exhaustion, and the facts of that dispute are intertwined with the question of whether the defendants violated Haynie's First Amendment rights. Haynie's claims stem from allegations that the defendants harassed him for filing complaints to prevent him from continuing to use the grievance process. He claims that records of many of his complaints are unavailable due to the defendants' conduct. Because the defendants' treatment of Haynie regarding the grievance process is central to Haynie's claims, a ruling on exhaustion would require me to make determinations about credibility and the merits of Haynie's constitutional claims. As outlined in *Perttu*, this is a question for the jury. Therefore, whether the defendants impeded Haynie's ability to use the prison's administrative process will be determined at trial.

C.   First Amendment Claims Against
Ashby, Owens, Squier, Deel, and Dye.

Ashby, Owens, Squier, Deel, and Dye move for summary judgment as to Haynie's First Amendment retaliation claims against them, arguing that their alleged threats do not rise to the level of severity required to state a claim.

To state a colorable First Amendment retaliation claim under § 1983, a plaintiff "must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 977 F. 3d 294, 299 (4th Cir. 2020) (citation and alterations omitted).

Haynie has satisfied the first prong of this test, because the filing of grievances and informal complaints has been found to constitute activity protected by the First Amendment. *Ofori v. Fleming*, No. 7:20-CV-00345, 2021 WL 4462922 at *3 (W.D. Va. Sept. 29, 2021). The second prong concerns an adverse action. "For purposes of a First Amendment retaliation claim under Section 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Martin v. Duffy*, 858 F. 3d 239, 249 (4th Cir. 2017) (alterations omitted) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F. 3d 474, 500 (4th Cir. 2005)). This is an "objective standard"; thus, "[w]hile the plaintiff's actual

response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill First Amendment activity, it is not dispositive." *Constantine*, 411 F. 3d at 500. The threats against Haynie here were sufficiently specific and severe to deter an ordinary person. They included threats of violence, threats of transfer to a new facility, and threats of placement in solitary confinement. A jury could find that this would chill First Amendment activity.

Finally, Haynie alleges that on multiple occasions, the defendants specifically referenced his prior complaints as the reason for their threats. Viewed in the light most favorable to Haynie, this establishes causation. The defendants' motion for summary judgment with respect to the First Amendment claims against Ashby, Owens, Squier, Deel, and Dye is therefore denied.

> D.  Eighth Amendment Claims Against Ashby and Robinette.

Ashby and Robinette argue that they are entitled to summary judgment as to Haynie's Eighth Amendment excessive force claims against them because Haynie failed to retain a medical expert to testify that their conduct during Haynie's van transport caused his back injury.

The unnecessary and wanton infliction of pain by a prison official through the use of excessive force violates the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). The Supreme Court mandates a two-prong analysis for prisoners' claims of excessive force: a subjective prong, asking whether "the officials acted

with a sufficiently culpable state of mind," and an objective prong, asking "if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id.* at 8 (internal quotation marks, alternations, and citation omitted). Under the subjective prong, the court must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. In making this inquiry, the court balances the need for the application of force, the relationship between the need for force and the amount of force actually used, and the extent of the injury inflicted. *Id.* Satisfaction of the objective prong under *Hudson* requires a showing that, in context, the use of force was "nontrivial," but does not require proof that the force caused extreme injury or pain. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010).

Here, Haynie alleges that Ashby and Robinette drove the transport van erratically in effort to injure Haynie. Haynie concedes that he cannot prove he suffered a bulging disc in his back but claims the van transport caused him to lose consciousness and experience additional back pain and abrasions. Under the circumstances at issue, there was no need for the application of force. Haynie was not a threat to Ashby or Robinette while confined to the back of the vehicle and the facts do not indicate that he resisted them. These allegations of intent combined with facts that indicate the officers' culpable state of mind are sufficient to state an Eighth Amendment claim.

Because Haynie's claims of increased pain and a loss of consciousness stem from his own experiences and perceptions, a medical expert is not required. Haynie no longer aims to prove a specific medical condition for which an expert must show a causal link. It is therefore up to the jury to weigh the intentions of the defendants and assess Haynie's credibility about the pain he suffered. Ashby and Robinette's motion for summary judgment regarding the Eighth Amendment claims against them is denied.

### E. Assault Claim Against Ashby.

Ashby moves for summary judgment as to Haynie's assault claim against him on the basis that Virginia law does not recognize verbal statements as assault. An assault is "an overt act both intended to cause and actually causing a reasonable fear of bodily harm in the victim." *Clark v. Commonwealth*, 676 S.E. 2d 332, 336 (Va. Ct. App. 2009) (internal quotation marks and citation omitted). Virginia law "is clear that mere words alone, however insulting and abusive, cannot constitute an actionable assault." *Simmons v. Norfolk & W. Ry.*, 734 F. Supp. 230, 232, n. 2. (W.D. Va. 1990).

In his Complaint, Haynie brought claims for assault against several defendants based on threats they allegedly made against him. At the motion to dismiss stage, I dismissed Haynie's assault claims against the other defendants due to Virginia law that even profane and threatening language is insufficient for an assault claim.

Ashby had not yet filed a response, so the assault claim against him remained. Haynie preserves his objection to my previous holding but concedes that its reasoning would call for dismissal of his assault claim against Ashby as well. Accordingly, I will grant Ashby's motion for summary judgment as to the assault claim against him.

IV.   CONCLUSION.

For the foregoing reasons, the Motion for Summary Judgment, ECF No. 51, is GRANTED with regard to the assault claim against Ashby and DENIED with regard to the First Amendment claims against Ashby, Owens, Squier, Deel, and Dye and the Eighth Amendment claims against Ashby and Robinette.

It is so **ORDERED**.

ENTER:   July 14, 2025

/s/  JAMES P. JONES
Senior United States District Judge